THE STATE OF NEW JERSEY, BY GROVER C. RICHMAN, JR., ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THE SPERRY & HUTCHINSON COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued November 5 and November 13, 1956—
Decided December 3, 1956.

*Mr. Elmer J. Bennett* argued the cause for the appellant (*Messrs. Carpenter, Bennett, Beggans & Morrissey,* attorneys; *Mr. Milton A. Dauber,* on the brief).

*Mr. Josiah Stryker* argued the cause for the respondent (*Messrs. Stryker, Tams & Horner,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The Chancery Division dismissed the State's complaint under the Custodial Escheat Act in response to the defendant's motion for judgment on the pleadings. Thereafter the State appealed to the Appellate Division and, while the appeal was pending there, we certified it on our own motion.

■■ The State's complaint alleged that the defendant had custody, *inter alia,* of moneys payable to various persons by way of the right of redemption on trading stamps issued by the defendant and that such moneys had remained unclaimed for more than five years by owners whose whereabouts were unknown. The defendant's answer set forth 13 separate defenses which raised serious questions with respect to the provability and enforceability of the State's claim. However, the single issue (embraced within the thirteenth separate defense) passed upon by the Chancery Division and the only one now presented by the parties for this court's consideration, is whether the Custodial Escheat Act has any application whatever to cash obligations other than for dividends, interest and wages. The defendant's contention is that the act, as applied to a domestic corporation such as the defendant, covers "only moneys payable as dividends upon its capital stock, interest payable upon its formal instruments evidencing indebtedness and moneys payable as wages." On the other hand the State's contention is that the act covers the defendant's "cash obligations generally" and that the cause should be permitted to proceed to trial on the various issues raised in the pleadings. The Chancery Division accepted the defendant's contention and ordered that the complaint be dismissed and that judgment on the pleadings be entered in its favor. In the course of its oral opinion the Chancery Division expressed the view that escheat actions "are in the nature of a penalty in the sense that property rights are being

taken away from citizens by the absolute escheat or by the custody" and that it could not be held that "the Legislature meant the liberal interpretation of the word cash in Section 29 when it defines the provisions of the other subject matters in Section 30." The Chancery Division's references to sections 29 and 30 were to *N. J. S.* 2A :37–29 and *N. J. S.* 2A :37–30 which originated in *L.* 1951, *c.* 304, *par.* 5. We may freely refer to the history of this legislation for whatever aid it may furnish in ascertaining its true purpose and meaning. *Lloyd v. Vermeulen,* 22 *N. J.* 200, 206 (1956) ; *Deaney v. Linen Thread Co.,* 19 *N. J.* 578, 583 (1955) ; *Abbotts Dairies v. Armstrong,* 14 *N. J.* 319, 323 (1954) ; *State v. McCall,* 14 *N. J.* 538, 545 (1954). See *Caputo v. Best Foods,* 17 *N. J.* 259, 264 (1955), where Justice Heher aptly noted that "the reason of the law, *i. e.,* the motive which led to the making of it, is one of the most certain means of establishing the true sense of the words."

The New Jersey Legislature first asserted its sovereign power to escheat personal property generally by its passage of *L.* 1946, *c.* 155. See *State by Van Riper v. American Sugar Refining Co.,* 20 *N. J.* 286 (1956). That act provides that whenever personal property within the State remains unclaimed for the period of 14 successive years it shall escheat to the State. Its definitions are comprehensive; thus, personal property includes moneys, negotiable instruments, choses in action, etc., and every other kind of tangible or intangible property; and unless a different meaning clearly appears from the context the word "owner" or "person" refers to corporations, associations, etc., as well as individuals. See *N. J. S.* 2A :37–11 ; *State, by Parsons, v. National Newark and Essex Banking Co.,* 31 *N. J. Super.* 246, 251 *(Ch. Div.* 1954). In *State, by Parsons, v. Standard Oil Co.,* 5 *N. J.* 281 (1950), affirmed *sub nom. Standard Oil Co. v. State of New Jersey,* 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951), this court held that the defendant corporation could successfully assert the six-year statute of limitations as a defense to the State's claim for

escheat of wages of former employees, interest (evidenced by bond coupons) and other miscellaneous cash obligations (evidenced by unpresented commercial bank checks) which had remained unclaimed for 14 years by owners whose whereabouts were unknown. Under this holding a substantial amount of such admittedly abandoned personal property might escape escheat with consequent harm to the public good; shortly after it was rendered the Legislature passed *L*. 1951, *c*. 304, which was primarily designed to enable the State to take custody of (and thereafter escheat) such personal property when it had remained unclaimed for five successive years.

In *State, by Parsons, v. United States Steel Corp.*, 22 *N. J*. 341, 353 (1956), this court recently pointed out that "the lawmakers intended to provide a means whereby the State might assert its right in timely fashion to overcome the obstacle imposed by limitations." And in the same case it dispelled the notion that the 1951 enactment was to be construed narrowly; in the course of his opinion for the court Justice Burling said at *p*. 355:

"Nor do we think that the statute is to be strictly construed so far as stakeholders are concerned. Defendant calls attention to *State v. United States Steel Corporation*, 12 *N. J*. 38, 47 (1953), where it was said:
'It is a well-settled principle that escheat and forfeiture are not favored by the law, and any doubt as to whether property is subject to escheat is resolved against the State.'
The statement was made in response to the State's argument that dividends declared by the corporation less than 14 years prior to suit should be subject to escheat under *R. S*. 2:53–17 (now *N. J. S*. 2A:37–13) providing for escheat of personal property after expiration of the 14 year period. We held that dividends which had not attained the 14 year vintage were not subject to escheat until that time, but the declaration of strict interpretation was expressive of an attitude toward the unknown owner rather than the corporate debtor."

We reaffirm the foregoing approach and reject the Chancery Division's view that the Custodial Escheat Act (*L*. 1951, *c*. 304—now *N. J. S*. 2A:37–29; *N. J. S*. 2A:37–30) is, in this proceeding between the State and

the defendant stakeholder or obligor, to be viewed as a penalty enactment and to be construed narrowly. Insofar as the unknown owners or claimants are concerned they are not adversely affected by the act; on the contrary its provisions have the remedial effect of increasing the period during which they may assert their claims without being barred by limitations. See *State v. American-Hawaiian Steamship Co.*, 29 *N. J. Super.* 116, 131 (*Ch. Div.* 1953). Although the State has the right to institute custody proceedings immediately after the lapse of five years, the claimants have the right to assert their claims against the State for a period of two years after the entry of judgment and the delivery of the moneys in question to the State Treasurer. *N. J. S.* 2A:37–32. And even after the lapse of that period the claimants may have relief within the terms of *N. J. S.* 2A:37–40. Insofar as the defendant stakeholder or obligor is concerned the act likewise would have no significantly adverse effects, for such defendant would have no just claim to retain the moneys for its own benefit and its payment to the State Treasurer would protect it against later action by the unknown owners or claimants. See *N. J. S.* 2A:37–33. See also *State, by Van Riper, v. American Sugar Refining Co., supra*, 20 *N. J.*, at *page 297*, where this court noted without dissent that "New Jersey's quest for legitimate revenues to be used for the good of all of its citizens is in nowise to be condemned and its right to the unclaimed dividends is admittedly superior to that of the corporation which had custody but no moral or legal claim to their retention."

We come now to the actual language of *chapter* 304 of the *Laws of* 1951, which was an amendment of the original escheat act of 1946 (*L.* 1946, *c.* 155). Its first four sections altered various terms of the original act and its fifth section provided as follows:

"5. Alternate proceedings in certain cases. In addition to the procedure provided for the escheat generally of personal property as defined in this act, the following alternate proceeding may be had

in certain cases defined herein whereby the State may take into its protective custcdy property consisting of cash, dividends, interest or wages owed by any corporation organized or doing business under the laws of this State, belonging to any person remaining unknown, or whose whereabouts is unknown, or whose property remains unclaimed as defined herein for a period of five successive years, and after such period of protective custody has expired then proceed to escheat such property to the State.

Whenever a corporation organized under the laws of this State shall have custody or possession of, or shall have deposited with or given to an agent or trustee residing within or without the State custody or possession of, any moneys which are or shall be payable to any person as a dividend upon the capital stock, preferred or common, of the corporation, or as interest payable upon the corporation's bonds, indentures, notes or other formal instruments evidencing the indebtedness of the corporation, or any moneys payable as wages from the corporation to any person, and whenever any person or any corporation organized under the laws of any other State and authorized to do business in this State shall have custody or possession of any moneys payable by such person or corporation to any person as wages earned within this State, or of any moneys otherwise having a situs within this State, which moneys are payable to any one person in any of the categories above enumerated and the owner of, beneficial owner of, or person entitled to the same has been and remains unknown for the period of five successive years, or the whereabouts of such person has been and remains unknown for the period of five successive years, or such personal property has been and remains unclaimed for the period of five successive years, then the Attorney-General or such attorney or counsellor-at-law as he may designate, may, at the instance of an escheator or upon his own motion, make application to the Superior Court, Chancery Division, for a summary order, upon such notice as the court may designate, directing the corporation or other person aforesaid to deliver such moneys to the State Treasurer for safekeeping. The court shall thereupon enter an order fixing a time for hearing upon the said application."

When the statutory provisions relating to the administration of civil and criminal justice were recently revised the foregoing provisions were largely re-enacted as *N. J. S. 2A* :37–29 and *N. J. S. 2A* :37–30; the parties concede that no intent to effect any substantive change in the law is here to be inferred from the revision. See *Murphy v. Zink,* 136 *N. J. L.* 235, 244 (*Sup. Ct.* 1947), affirmed 136 *N. J. L.* 635 (*E. & A.* 1948); *Hartman v. City of Brigantine,* 42 *N. J. Super.* 247, 255 (*App. Div.* 1956).

 The language in the first quoted paragraph tends to support the State's contention that the Legislature intended to have the Custodial Escheat Act apply to cash obligations generally of New Jersey corporations. Thus it expressly provides that in the cases defined therein the State "may take into its protective custody property consisting of cash, dividends, interest or wages owed by any corporation organized or doing business under the laws of this State." The defendant contends that when considered in the light of the second paragraph the quoted language may properly be construed to refer only to dividends on its capital stock, interest on formal corporate instruments and wages payable by it, and to exclude other cash obligations; that construction would involve excision of the comma after the word "cash" and would bypass the rules of statutory construction which have been approved in earlier decisions of this court. Thus in *Weinacht v. Board of Chosen Freeholders of County of Bergen,* 3 *N. J.* 330, 334 (1949), Justice Wachenfeld pointed out that "punctuation affords some indication of the true legislative intent" and is not ordinarily to be disregarded; in *Hoffman v. Hock,* 8 *N. J.* 397, 406 (1952), Justice Ackerson restated the well-recognized rule that a "construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided"; and in *Abbotts Dairies v. Armstrong, supra,* 14 *N. J.,* at *page* 325, we followed the general principle that "statutory language is to be given its ordinary meaning in the absence of specific intent to the contrary."

 The State's position finds support not only in the language of the first paragraph but also in the broad public purpose which underlay the enactment of the Custodial Escheat Act. The Legislature clearly sought to obviate the escape from escheat which resulted from the holding in the *Standard Oil* case that the State's claim for appropriation of unpaid wages, interest and other cash obligations had there been barred by the statute of limitations. See *Kepner, "Personal Property,"* 6 *Rutgers L. Rev.* 221, 226 (1951), where Professor Kepner pointed out that:

"As a result of the *Standard Oil Company* case the legislature amended the escheat act by providing for a separate procedure if the property is cash, dividends, interests or wages. If such funds are unclaimed after five years, the court, upon application by the Attorney-General, may order the property turned to the state treasurer. If not claimed within two years while in the possession of the state, the funds shall thus escheat."

Statutory correction with respect to wages and interest without any statutory alteration with respect to the other cash obligations would indeed represent a strange legislative approach. In construing statutory enactments we may ordinarily assume that the Legislature contemplated remedying, to the extent feasible, the whole rather than part of the particular evil presented. *Cf. Motorlease Corp. v. Mulroony*, 9 *N. J.* 82, 87 (1952), where Justice Oliphant, in construing *R. S.* 46:36–1, remarked that "the act should not be construed as correcting only one small part of the injustice at which it was aimed."

The defendant relies on the second paragraph, which, it says, calls for the narrowing of the first paragraph to alter what would otherwise seem to be its plain meaning. Although the matter is by no means free from doubt, the State has advanced a plausible interpretation which enables fulfillment of the comprehensive legislative design and the sensible application of the entire enactment as it was finally adopted. It stresses that in the first paragraph the Legislature evidenced its intent to exercise its full constitutional power to take custody of all escheatable cash obligations of corporations organized or doing business under the laws of New Jersey, and that the additional reference to dividends, interest and wages represented cautious legislative listing of the major items which were actually the subject of earlier and pending litigation. And it points out that in the second paragraph the Legislature was concerned with the *situs* of intangibles for escheat purposes (also the subject of earlier and pending litigation) and intended not to limit the sweep of the first paragraph but rather to fix the rules of *situs* which would determine when the property broadly

described in the first paragraph would fall within the orbit of the escheat powers of New Jersey.

Thus the first reference in the second paragraph is to obligations of domestic corporations to pay dividends on capital stock, interest on formal corporate instruments and wages due to any persons; these are given New Jersey *situs* on the basis of the corporate domicile in New Jersey. See *State v. American Sugar Refining Co., supra; Standard Oil Co. v. State, supra.* The next reference is to any persons and foreign corporations having custody of wages earned within New Jersey; wages earned within New Jersey are apparently deemed by the Legislature to have a New Jersey *situs* no matter where the obligator was domiciled. The final reference is to any persons and foreign corporations having custody of "any moneys otherwise having a *situs* within this State, which moneys are payable to any one person in any of the categories above enumerated." It seems highly significant that here the Legislature did not follow up its specific reference to wages by an equally specific reference to interest and dividends but used the much more comprehensive phraseology, of any moneys otherwise having a *situs* within New Jersey; that would ordinarily encompass other cash obligations. It seems equally significant that here the Legislature did not confine itself to foreign corporations but referred to any persons which would ordinarily include all corporations as well as individuals and groups of individuals. See *N. J. S. 2A:37–11.*

We are not unmindful of the limitation suggested by the closing phrase, "which moneys are payable to any one person in any of the categories above enumerated." The State points out that when read strictly in accordance with rules of grammatical construction the persons in the enumerated categories are those described in the first paragraph as remaining unknown or whose whereabouts are unknown or whose property remains unclaimed for five years; however, in context there would seem to be much more substance to the State's alternative contention that the categories referred to are those described in the first paragraph as "cash,

dividends, interest or wages." We reject the defendant's contrary contention that the categories are those referred to in the initial clause of the second paragraph; while that would not be an impermissible interpretation it would leave without satisfying explanation the breadth of the language in the first paragraph and in the immediately preceding portion of the second paragraph, and would leave partially unfulfilled the dominant statutory purpose evidenced by the entire enactment when read in the full light of its legislative history.

Reversed and remanded for trial in the Chancery Division.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING and JACOBS—4.

*For affirmance*—Justice WACHENFELD—1.