154 N.J. Super. 247 (1977)
381 A.2d 94
NEWTON E. MILLER, MAYOR OF THE TOWNSHIP OF WAYNE, COUNTY OF PASSAIC, PLAINTIFF,
v.
TOWNSHIP OF WAYNE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY AND NEW JERSEY STATE POLICEMEN'S BENEVOLENT ASSOCIATION, LOCAL NO. 136, DEFENDANTS, THE NEW JERSEY STATE ASSOCIATION OF CHIEFS OF POLICE, INTERVENOR.
Superior Court of New Jersey, Law Division.
Decided November 18, 1977.
*248 Mr. Howard Stern for plaintiff (Messrs. Stern, Steiger, Croland & Bornstein, attorneys).
Mr. Michael S. Meisel for defendant Township of Wayne (Messrs. Cole, Berman & Belsky, attorneys).
Mr. Michael K. Diamond for defendant New Jersey State Policemen's Benevolent Association, Local No. 136 (Messrs. Diamond, Diamond & Afflitto, attorneys).
Mr. Alfred J. Villoresi for intervenor New Jersey State Association of Chiefs of Police (Messrs. Villoresi & Buzak, attorneys).
DOAN, J.S.C., Retired and Temporarily Assigned on Recall.
The central issue presented in this case for determination is narrow and clearly defined. Plaintiff, the mayor of Wayne Township, claims the right and authority to consider and appoint a chief of police from without the ranks of the present forces of the police department of that municipality. The claim is disputed by the township council, the local chapter of the Policemen's Benevolent Association (PBA Local No. 136) and the New Jersey State Association of Chiefs of Police, intervenor, all of whom assert that the appointment must be made from within the membership of the municipal police department.
The facts are substantially without dispute. On December 31, 1975 the township chief of police retired from the force. Plaintiff, as mayor, ordered the business administrator of the township to solicit applications for the vacancy. Advertisements were placed in various police journals and approximately *249 140 resumes were received, only two or three of which came from members of the local force. As of the present time the post of chief of police is still unfilled. No candidates have been interviewed and no nomination has been sent to the township council for consideration and appointment. A controversy arose as to the source or group from which a chief of police could be selected and appointed. It is plaintiff's contention that as mayor of a municipality organized under Plan F of the Faulkner Act, he is free under N.J.S.A. 40:69A-43(b) to appoint any person he wishes as chief of police, a descriptive term which he considers as being synonymous with the words "director" or "department head" as used in that statute. PBA Local No. 136 and the State Association of Chiefs of Police dispute the mayor's right or authority to select and nominate a person to fill the vacant position of chief of police from a group other than the membership of the township police department as it exists at the time of selection and appointment.
By reason of the clash of opinions and the uncertainty engendered thereby, the mayor, without the blessing of the council (which turned down his request that he be authorized to institute this action), brought this action under the Uniform Declaratory Judgments Act naming as defendants PBA Local No. 136 and the Township of Wayne. The New Jersey State Association of Chiefs of Police was granted leave to intervene in this action because of the importance of the question involved.
Incidental to the central issue in controversy are the claims of defendants that this action is not a proper one under the Declaratory Judgments Act. They urge, additionally, that filling the vacancy of chief of police is a promotion and under N.J.S.A. 40A:14-129 and the township ordinance all promotions to a superior position in the police department must be made from within the force as it is presently constituted.
Each of the parties moves for summary judgment.

*250 I
The action is properly brought under the Uniform Declaratory Judgments Act, N.J.S.A. 2A:16-50 et seq.
The Uniform Declaratory Judgments Act, N.J.S.A. 2A:16-50 et seq., is remedial in nature. It is designed "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations. It shall be liberally construed and administered * * *" to carry out its general purpose of making uniform the law of those states which enact it. N.J.S.A. 2A:16-51.
To serve these ends it is provided that all courts of record, within their respective jurisdiction, have the power to declare rights, status and other legal relations. N.J.S.A. 2A:16-52. A person "whose rights, status or other legal relations are affected by a statute, [or] municipal ordinance * * * may have determined any question of construction or validity arising under the * * * statute, [or] ordinance * * * and obtain a declaration of rights, status or other legal relations thereunder." N.J.S.A. 2A:16-53. The remedy thus provided is, however, circumscribed by the salutary qualification that the jurisdiction of the courts not be invoked in the absence of an actual controversy.
It is the established policy of our courts to refrain from rendering advisory opinions, from deciding moot cases or generally from functioning in the abstract, and to decide only concrete contested issues (subject to the court's jurisdiction) conclusively affecting adversary parties in interest. N.J. Turnpike Auth. v. Parsons, 3 N.J. 235, 240 (1940). "The first point to be considered in any proceeding for a declaratory judgment is whether or not the controversy that is presented * * * is actual and bona fide or is merely one in which `the semblance of judicial proceeding and form of due process are present'." Id. at 241.
In New Jersey Bankers Ass'n v. Van Riper, 1 N.J. 193, 198 (1948), it was held that the party plaintiff seeking to invoke declaratory relief must itself have an interest in the *251 proceeding, either individually or as a representative of a class, and there must also be before the court one who is capable of undertaking the defense or enforcement of an outstanding interest adverse to that which the plaintiff purports to represent. This requirement reflects the wholesome general rule that litigation shall not be maintained by a stranger to a controversy, for otherwise the fundamental beneficial function of a declaratory proceeding  the arrival at a final, pacifying and tranquillizing decision  fails of its purpose. Id.
The court is satisfied from the evidence submitted that, within the limits of the issue herein raised, a justiciable controversy exists that is ready for determination. The issue, as has been stated, is whether the authority in the Township of Wayne empowered to appoint a police chief or select or nominate one, may choose such a candidate from outside the municipal police force. The dispute calls for an interpretation of the Faulkner Act, the municipal ordinances of Wayne and those general statutes of the State governing fire and police department activities. Plaintiff mayor can be said to have an interest, in view of his role as chief executive of the municipality, in the determination of whether the law permits him to choose a police chief from outside the department  both individually and as a representative of the citizens of Wayne who have gone without a police chief for almost two years due to the controversy. Defendant local police union is truly an adverse party in that it represents the men and women who would be adversely affected by such an action on the part of the mayor. So likewise is the intervenor, the New Jersey State Association of Chiefs of Police.
Defendant PBA Local No. 136 contends that the issue presented is not ripe for declaratory judgment. It asserts that the complaint merely alleges that plaintiff "intends to consider" applicants from outside the Wayne police force and that declaratory judgment must await an allegation that plaintiff has actually appointed or named an appointee from outside the local police force. This assertion becomes academic *252 in the light of the later determination herein of the central issue.
Further, it is common knowledge that where a selection is to be made from a class of 140 applications, the final choice of a nominee is the product of the selection process. Integral to this process of appointment is a weeding out stage and an interviewing stage to meet and personally evaluate the applicants considered qualified. No substantial reason has been presented to demonstrate why the mayor and his business administrator should be required to invest the time and expense which such a procedure requires without prior assurance that the candidates so invited could legally be presented to the council for consideration at the final stage of the appointment.
Lastly, PBA Local No. 136 urges that the plaintiff's term as mayor expires on December 31, 1977, about one month hence, and that in view of the limited time in which plaintiff has to make an appointment, his lack of action in selecting an appointee to date, his failure to actually name an appointee and the fact that his appointee may well turn out to be a present member of the Township of Wayne Police Department, there does not presently exist any controversy over which a declaratory judgment may be properly decided. Plaintiff, on the other hand, seeks the aid of the court to alleviate the present stalemate and to permit him to fulfill his executive responsibility in selecting a new chief of police. He asserts his right to make the selection and concedes that unlike many of the heads of other departments in Wayne Township, the term of chief of police does not end under the Wayne ordinances concerning the police department (§ 25-1 et seq.) with the term of office of the mayor appointing him nor under the general law (N.J.S.A. 40A:14-128).
The public interest dictates that plaintiff's standing to maintain the present action is properly brought to afford relief from the uncertainty with respect to the rights involved and brought into question.

*253 II
The controversy is ripe for determination by summary judgment.
R. 4:46-1 provides that:
* * * [a] party seeking any affirmative relief, including a declaratory judgment may, at any time after the expiration of 20 days from the service of his pleading claiming such relief, or after service of a motion for summary judgment by the adverse party, move for a summary judgment or order in his favor upon all or any part thereof or as to any defense. A party against whom a claim for such affirmative relief is asserted may move at any time for a summary judgment or order in his favor as to all or any part thereof. [Emphasis supplied]
The well-known standard for summary judgment as enunciated in Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954), is whether the case presents a genuine issue as to any material fact challenged. The summary judgment procedure is designed to provide a method of disposing of any cause where a discriminating search of the merits on the papers submitted clearly shows no factual dispute present and that the moving party is entitled to judgment as a matter of law. It is admitted that the Township of Wayne is a municipal corporation of the State of New Jersey, operating under Plan F of the Faulkner Act, and that plaintiff is the mayor of Wayne  although defendant PBA contends that the suit should be considered as having been brought by the plaintiff individually. Defendants neither admit nor deny the allegation that plaintiff intends to consider as applicants for the position of police chief not only present members of the police department but also those not presently members and those with no previous association with the force, and for present purposes this allegation must be considered as not in dispute. The problem therefore resolves itself into one of law.
The case therefore can and should be decided on the facts presented and the applicable law.

*254 III
The Township of Wayne is a municipal corporation of the State of New Jersey organized under the Optional Municipal Charter Law (N.J.S.A. §§ 40:69A-1 to 40:69A-210), commonly known as the Faulkner Act. More specifically, Wayne has chosen the "mayor-council plan F" form of government under N.J.S.A. 40:69A-74 to 80, a plan which also incorporates N.J.S.A. 40:69A-26 to 30, 36 to 48 and 150 to 210.
Upon the adoption by any municipality of any of the optional forms of government under the Faulkner Act, the municipality shall thereafter be governed by the plan adopted, by the provisions of the act common to all optional plans and by all applicable provisions of general law. N.J.S.A. 40:69A-26.
Under N.J.S.A. 40:69A-29(a) each municipality governed by an optional form of government under the Faulkner Act has, subject to the provisions of this act or other general laws: full power to organize and regulate its internal affairs which includes the establishment of offices, positions and employments; the municipality may define the functions, powers and duties of these offices, positions and employments and fix their term, tenure and compensation.
N.J.S.A. 40:69A-39 provides that "the executive power of the municipality shall be exercised by the mayor." "The mayor shall enforce the charter and ordinances of the municipality and all general laws applicable thereto." N.J.S.A. 40:69A-40. "He shall supervise all of the departments of the municipal government." Id. Under N.J.S.A. 40:69A-43(b) each department of the municipality
* * * shall be headed by a director, who shall be appointed by the mayor with the advice and consent of the council. Each department head shall serve during the term of office of the mayor appointing him, and until the appointment and qualification of his successor. [Emphasis supplied]
*255 The term "general law" is defined by N.J.S.A. 40:69A-28 for the purposes of the Faulkner Act to mean
* * * any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities, and the following additional laws whether or not such additional laws are so applicable or available to all municipalities: legislation relating to taxation, local courts, education, health, public authorities serving more than one municipality, and municipalities in unsound financial condition.
Plaintiff's position in this contest is that he has unquestioned authority to appoint the chief of police pursuant to the provisions of N.J.S.A. 40:69A-43(b), supra, claiming that the chief of police is a "director" or "department head" under that statute.
Plaintiff argues that the cited statute controls and not N.J.S.A. 40A:14-129 as defendant contends. That statute reads as follows:
In any municipality wherein Title 11 (Civil Service) of the Revised Statutes is not in effect, and except in cities of the first and second class, a promotion of any member or officer of the police department or force to a superior position shall be made from the membership of such department or force. Due consideration shall be given to the member or officer so proposed for the promotion, to the length and merit of his service and preference shall be given according to seniority in service.
No person shall be eligible for promotion to be a superior officer unless he shall have previously served as a patrolman in such department or force.
The Township of Wayne is not a city of the first or second class, nor has it chosen to adopt the Civil Service Statutes. Defendants contend that N.J.S.A. 40A:14-129 controls as it is a "general law" as defined in N.J.S.A. 40:69A-28, and that Faulkner Act municipalities are subject to the provisions of that general law. N.J.S.A. 40:69A-29.
One of the issues raised by the challenge is whether N.J.S.A. 40A:14-129 is a general law and controls in the present controversy.
*256 There can be no doubt that N.J.S.A. 40A:14-118 et seq. is a general law. N.J.S.A. 40A:14-129 had its source in N.J.S.A. 40:47-1 et seq. which was adopted before the Faulkner Act. The intention of the Legislature is clearly set out in the body of the statute itself. If there was any doubt it was dispelled by the legislative statement appearing on the original Assembly Bill No. 166, dated February 7, 1927 which is the predecessor to N.J.S.A. 40A:14-129, which statement specifically recites that:
The purpose of this act is to secure proper recognition of service and merit of police officers by preventing men from outside municipalities being appointed to superior positions over their heads and without regard to years of faithful service in their own department.
It has become the practice of men who have retired from one police department, receiving a pension therefrom, and receiving appointment to superior positions in other municipalities, thus having two sources of income and at the same time destroying the morale of the men who are, by faithful and efficient service, striving for promotion.
It is to prevent such injustice that this bill is intended.
Worthy of note also is the report of the Commission on Municipal Government in 1949 relating to the proposed Faulkner Act. Its comment on what are now N.J.S.A. 40:69A-26, 27 and 28 reads:
This definition of general law would apply to the optional plans such standard laws as the "Local Bond Law" (R.S. 40:2-1 et seq.); fire and police (R.S. 40:47-1 et seq.); ordinances and resolutions (R.S. 40:49-1 et seq.); planning, building laws, zoning (R.S. 40:55-1 et seq.). Further study may require an expansion of the "additional laws" category. The problem of classification is one which is basic to any new system of municipal government, but it is unlikely to be solved by any generalization. The Commission has experimented with various "standard classifications" intended to replace the present hodge-podge of classifications, but has not yet determined upon any suitable basis which would be germane to all of the various purposes of legislation. With the large degree of local self-government provided by the powers clause of this chapter, however, the Commission believes that the need for legislative classification has been substantially reduced if not entirely eliminated. [Emphasis supplied]
*257 "The reason of the law or the motive which leads to making of it is one of the most certain means of establishing the true sense of the words in the statute." State v. Sperry & Hutchinson Co., 23 N.J. 38 (1956).
In Deaney v. Linden Thread Co., 19 N.J. 578 (1955), Justice Brennan said the following:
The bundle of extrinsic aids which may be consulted in the interpretation of a statute includes the sponsor's statement which accompanies the legislative bill, but, as in the case of other legislative materials, a considered judgment is exercised in determining the weight which will be attached to it; * * * [at 584-585]
As was said by Justice Jacobs in his concurring opinion in Board of National Missions v. Neeld, 9 N.J. 349 (1952):
The introducer's statement clearly constitutes relevant evidence on any proper issue as to the legislative purpose, meaning or intent; * * * [at 361]
It is further contended by plaintiff that N.J.S.A. 40A:14-129, even if a general law, is inconsistent with the Faulkner Act and hence inapplicable to the appointment of a police chief.
A comparison and consideration of the statutes in question, i.e., N.J.S.A. 40A:14-118 et seq.; its predecessor N.J.S.A. 40:47-1 et seq.; the legislative statement attached to the latter; the 1949 Commission Report on Municipal Government and the statement therein contained that "this definition of general law would apply to the optional plans such standard laws as * * * fire and police (R.S. 40:47-1 et seq.) * * *," and N.J.S.A. 40:69A-43 (b) leads clearly to the conclusion that these statutes are not in conflict but are complementary to each other.
Highlands v. Davis, 124 N.J. Super. 217, 224-225 (Law Div. 1973), involved a complaint on behalf of a borough mayor for declaratory judgment as to his authority to make appointments and promotions in a "small municipality plan B" police department. The court said that in view of the *258 history of the Faulkner Act and its relationship with "general law" governing the municipalities, it is apparent that the law concerning the establishment of police departments in municipalities, N.J.S.A. 40A:14-118, which leads off § D of Chapter 14 of Title 40A (of which section N.J.S.A. 40A:14-129 is a part) is complementary to, rather than in conflict with the Faulkner Act. It was said to help complete an overall legislative design in which appointments to administrative offices established by ordinance are goversed by the Faulkner Act, along with all other offices which the mayor finds necessary to the proper administration of government but which are not covered by other general law, while the appointment of members of the police force is specifically governed by ordinance adopted under the general laws of the State concerning fire and police activities.
In Lynch v. Edgewater, 8 N.J. 279 (1951), a patrolman sued under N.J.S.A. 38:23-1 to recover salary lost during a period of leave for U.S. Army Reserve service. Defendant borough contended that the statute was special legislation in contravention of the New Jersey Constitution in that it permitted the regulation of the internal affairs of a municipality. The court said that [w]here the statute in question as the one before us has general application to all municipalities, or to a properly classified group of municipalities, the regulation by the Legislature effected by that statute concerning the internal affairs of municipalities, including performance of duty by police officers, is constitutional." The applicability of N.J.S.A. 40A:14-129 to all municipalities wrere Civil Service is not in effect, along with the exemption of cities of the first and second class, seems to the court in the present matter to leave a properly classified group of municipalities.
Regulation of the internal affairs of municipalities may be effected by general laws enacted by the Legislature. N.J. Const. (1947), Art. IV, § VII, par. 9. In Westervelt v. Tenafly Mayor and Council, 4 N.J. Misc. 579, 580-581, 133 *259 A. 753 (Sup. Ct. 1926), the court considered an act which provided that
Wherever in any municipality of this State, other than a city of the first class, a police department has been in existence for at least three years prior to the passage of this act, the promotions to superior positions shall be made from the membership of such police department as constituted at the time of such promotion * * *.
The court noted that the State Constitution then in effect provided, as does N.J. Const. (1947), Art. IV, § VII, par. 9, clause 13, that "[t]he Legislature shall not pass any private, special or local laws: * * * [r]egulating the internal affairs of municipalities formed for local government and counties * * *." In Westervelt the court struck down the act as being unconstitutional. They noted, however, that the basis for their decision rested "not upon the exclusion of cities of the first class from the operation of the act, but because the act only affects promotions in police departments which have been in existence for at least three years prior to the passage of the act * * *. We think the classification illusive * * *. Legislation like the act under review would, if sanctioned, permit the Legislature to pass an act which would apply to a single municipality. This is what we think the constitution inhibits." Id. at 581-582.
Furthermore, in State v. Federanko, 26 N.J. 119, 129-130 (1958), it was said that "[t]he Legislature is presumed to be familiar with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose * * *. And the courts have the duty of reconciling them so as to give effect to both expressions of the lawmakers' will." Thus, under principles of statutory construction, where statutes in some apparent conflict relate to the same subject matter, it is the duty of the court to construe them together as a unitary and harmonious whole insofar as it may be possible in order that each may be fully effected. Lawrence v. Butcher, 130 N.J. *260 Super. 209, 212 (App. Div. 1974). The provisions of a specific statute will prevail over a general statute. Id. The court in Lawrence did, however, note the case of Indyk v. Klink, 121 N.J. Super. 314, 321 (App. Div. 1972), which dealt with the question of whether the township attorney and the township engineer should be appointed by the council or by the mayor. The court in Indyk found a legislative intent to prefer the provisions of the Optional Municipal Charter Law as a whole to specific statutes. The Lawrence court did not regard that case as apposite because the statutes involved in Indyk could not be construed in a harmonious manner. 130 N.J. Super. at 213.
In the present case the statutes can be and therefore should be construed in a harmonious manner. N.J.S.A. 40A:14-129 is not inconsistent with the Faulkner Act and should be read in conjunction with it. Irrespective of the debate over whether it is the mayor or the business administrator who technically has the power to nominate the police chief, N.J.S.A. 40A:14-129 does not purport to strip the appointer of his power. It merely defines the group from which the appointment may be made.
Such a conclusion is mandated when the ordinances of the Township of Wayne are read along with the statutes. It is plaintiff's position that the police chief should be considered as a department head and not a member of the force subject to N.J.S.A. 40A:14-129.
It is pertinent in this connection to examine the ordinance provisions of the Township of Wayne to even better understand their view as to who is the director or department head of the police department. Section 25-2 says "under the direction of the Mayor, the Business Administrator shall be responsible for the administration of the Police Department." Section 25-3 of the ordinance reads:
* * * the Business Administrator shall be the administrative head of the Police Department, responsible to the Mayor for the proper administration of police affairs. He shall govern and control the Police Department, its business and affairs and prescribe its rules *261 and regulations. The authority of all members of the Department, including the Chief of Police, shall be subordinate to the authority of the Business Administrator.
Section 25-4 reads:
All orders or instructions to the Chief of Police shall be issued to him only by the Business Administrator with the approval of the Mayor. All such orders shall be recognized, carried out and obeyed by the Chief and all other members of the Police Department. * * *
The foregoing ordinance provisions make it plain beyond reasonable dispute that the director or department head of the Police Department of the Township of Wayne is the business administrator and not the chief of police. The provisions of N.J.S.A. 40:69A-43(b) upon which statute plaintiff bottoms his claim, is therefore inapplicable to the appointment of a chief of police since the mayor's claimed authority for unlimited discretion in the possible appointment of a chief of police from without the Wayne police force has no basis in the law. It is of further interest to note that the composition of the department, § 25-5 of the ordinance, regulating organization and personnel strength, includes the chief as a "regular" member of the police department. A "superior officer" under § 25-1 is defined as "[a] member of the Police Department holding the rank of Lieutenant or any rank above Lieutenant." (Emphasis supplied). The rank of chief is not specifically excluded. While it is true that under § 25-74 (a) (1) the chief is designated as the commanding officer, these designations merely identify him as the dynamic arm of the department head, the business administrator.
Finally, under N.J.S.A. 40:69A-43(b) department heads serve only during the term of office of the mayor appointing him. The Wayne ordinances so provide for most of the heads of the municipal departments established pursuant to N.J.S.A. 40:69A-43(a), including: the Business Administrator of the Department of Administration [§ 4-20(A)]; *262 the Director of the Department of Finance [§ 4-31(A) (1)]; the Chief Assessor of the Department of Assessments [§ 4-34]; the Township Planner of the Department of Planning [§ 4-39]; the Director of the Department of Public Works [§ 4-41(A)]; and the Director of the Department of Parks and Recreation [§ 4-48(A)]. The head of the Department of Health & Welfare, under §§ 4-27 and 28, serves for a fixed term. None of the foregoing is true of the chief of police whose term "shall be indeterminate and continuous during good behavior and efficiency". See N.J.S.A. 40A:14-128. The ordinance is silent as to his term of office, understandably. Further N.J.S.A. 40:69A-43(d) gives the head of a department the power to appoint subordinate officers and employees, and Wayne ordinance § 25-13 gives this power, as regards the police department, to the business administrator, subject to the approval of the mayor and not to the chief of police.
All of the factors herein discussed point unmistakably to the conclusion, which the court finds, that the chief of police is not a department head or director under N.J.S.A. 40:69A-43(b), but is rather the chief executive officer of the municipal police force subservient to the business administrator and the mayor, and as such the filling of the vacancy in that position is subject to and controlled by the general law set out in N.J.S.A. 40A:14-129 and § 25-26 of the Wayne police ordinance.
The pertinent part of that ordinance reads:
The Business Administrator shall submit to the Mayor his recommendations for promotion within the Department. The Mayor may make promotions based on such recommendations.
The mayor is without authority to consider or designate or appoint a chief of police from without the membership of the Wayne Township Police Department.
On the cross-motions for summary judgment, plaintiff's motion is denied and judgment is entered in favor of defendants in accordance with the views expressed herein.