NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3191-14T2

STANLEY E. WILLIAMS,

    Plaintiff-Respondent,

v.

BOROUGH OF CLAYTON,

    Defendant-Appellant.

_____

```
┌─────────────────────────────┐
│   APPROVED FOR PUBLICATION   │
│                              │
│      October 16, 2015        │
│                              │
│      APPELLATE DIVISION      │
└─────────────────────────────┘
```

       Argued September 16, 2015 - Decided October 16, 2015

       Before Judges Sabatino, Accurso, and O'Connor.

       On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-24-15.

       William M. Tambussi argued the cause for appellant (Brown & Connery LLP, attorneys; Mr. Tambussi and William F. Cook, on the briefs).

       Thomas A. Cushane argued the cause for respondent (The Cushane Law Firm, LLC, attorneys; Mr. Cushane and David P. Hiester, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This declaratory judgment action concerns the application of N.J.S.A. 40A:14-129 and -130, statutory provisions that impose certain hiring and promotional restrictions upon police

departments in smaller New Jersey cities that are not of the "first class" or "second class"[1] in population and which are not civil service jurisdictions. In particular, the statutes direct that promotions to "superior position[s]" within such police departments be restricted to officers who have served in those departments for at least three years. Ibid.

The precise legal issue presented to us — one which has not been the subject of a prior reported appellate opinion — is whether an applicant for Police Chief in such a jurisdiction is statutorily eligible for that appointment if he or she has not served as an officer within that police department for three years. We concur with the trial court that where one or more

---

[1] "For legislative purposes, cities shall be classified as follows based upon population as ascertained by the most recent Federal decennial census:

    a. First class — cities having a population of more than 150,000;

    b. Second class — cities having a population of not less than 12,000 but not more than 150,000;

    c. Third class — all cities which are not first- or second-class cities except cities bordering on the Atlantic ocean being seaside or summer resorts;

    d. Fourth class — cities bordering on the Atlantic ocean which are seaside or summer resorts."

[N.J.S.A. 40A:6-4.]

qualified applicants meet those statutory requirements, the Police Chief must be appointed from within the ranks of the municipality's current police force. We therefore affirm the issuance of declaratory relief in this case confirming that limitation.

I.

The main statute implicated by this case, N.J.S.A. 40A:14-129, was first adopted in 1927. See L. 1927, c. 194, § 1. The law was recodified in 1971, and presently reads as follows:

> In any municipality wherein Title 11 (Civil Service) of the Revised Statutes is not in effect, and except in cities of the first and second class, a promotion of any member or officer of the police department or force to a superior position shall be made from the membership of such department or force. Due consideration shall be given to the member or officer so proposed for the promotion, to the length and merit of his service and preference shall be given according to seniority in service. No person shall be eligible for promotion to be a superior officer unless he shall have previously served as a patrolman in such department or force.
>
> [N.J.S.A. 40A:14-129 (emphasis added).]

A companion provision, which was first enacted in 1940 and which was recodified in 1971 as N.J.S.A. 40A:14-130, imposes an additional three-year service requirement, as follows:

> In any municipality wherein Title 11 (Civil Service) of the Revised Statutes is not in operation, except as otherwise provided by

A-3191-14T2

law, a member or officer of the municipal police department or force <u>shall not be promoted until he has served at least 3 years in such department or force</u>.

[<u>N.J.S.A.</u> 40A:14-130 (emphasis added).]

<u>The Borough's Efforts to Select a New Police Chief</u>

The circumstances in this case involve efforts by defendant, the Borough of Clayton ("the Borough"), to select a new Police Chief. The parties stipulate that the Borough is not a city of the first class or second class, and that it is not a jurisdiction subject to the civil service laws under <u>Title</u> 11A.

The Borough has approximately 8,000 residents. As the name suggests, the municipality is organized under the borough form of government, <u>N.J.S.A.</u> 40A:60-1 to 8.1, with a governing body composed of a Mayor and six Council members. As of January 2015, the Borough's police force numbered fifteen police officers, consisting of eleven patrol officers, three sergeants, and one special law enforcement officer.

The Borough's need to select a new Police Chief arose when its previous Chief took a leave of absence early in 2014, evidently for health reasons. Consequently, in May 2014 the

Gloucester County Prosecutor's Office ("GCPO") took over control of the Borough's Police Department, through a supersession.[2]

When the GCPO took over, it appointed Detective William Perna to serve as supervisor of the Borough's police department until further notice. Perna has twenty-seven years of experience with the New Jersey State Police. For reasons that are not entirely clear from the record, in September 2014 Perna was replaced by GCPO Sergeant Ronald Koller.[3]

On October 9, 2014, the Borough passed Ordinance #16-2014, thereby creating the position of "Acting Chief of Police" during the supersession.[4] Both Perna and plaintiff Stanley E. Williams applied for the Acting Chief position.

Plaintiff is a long-time resident of the Borough who has worked in its police department for at least twenty-one years. He is a patrol officer who has served as the department's head firearms instructor and its head use-of-force instructor for the

---

[2] See Passaic Cnty. PBA Local 197 v. Office of the Passaic Cnty. Prosecutor, 385 N.J. Super. 11, 16-17 (App. Div.) (explaining the County Prosecutor's supervisory authority over county and municipal police officers), certif. denied, 188 N.J. 217 (2006). In essence, a supersession is a period of time where the office of a county prosecutor directly supervises the day-to-day operations of a local police department within that county.

[3] We were advised at oral argument that Koller continues to manage the department under the ongoing supersession at present.

[4] The ordinance has not been challenged in this litigation.

past eleven years. Prior to embarking on his career in law enforcement, plaintiff played professional basketball with the Boston Celtics for several years.

The Borough decided not to fill the position of Acting Chief. Instead, it elected to proceed with the appointment of a permanent new Chief. The Borough therefore circulated a job advertisement for permanent Police Chief internally within the department on October 31, 2014, and posted the ad publicly two days later. Among other qualifications, the posting requires applicants with a Bachelor's Degree in police science, criminal justice, or other related field, with a preference for a Master's Degree. The posting also requires applicants to have at least five years of "increasingly responsible police supervisory experience directly related to the operations of a police department."

The Borough received five applications in response to the job advertisement. Two candidates were immediately eliminated due to their failure to satisfy the advertised educational or licensing requirements. The remaining applicants were plaintiff, Perna, and a third candidate, Preston Forchion. Of these remaining three candidates, only plaintiff has served as a police officer in the Borough.

As part of the selection process, the Borough created a testing procedure consisting of three parts:  a written exam administered by the New Jersey State Chiefs of Police Association ("NJSCPA") worth 40% of the applicant's score; an oral exam, also administered by the NJSCPA, and also worth 40%; and an interview with a panel of public officials from the Borough, worth the remaining 20%.  None of those testing steps have proceeded in this case.

The Litigation

On January 12, 2015, two days before the start of the formal hiring process, plaintiff filed in the Law Division an action in lieu of prerogative writs, see Rule 4:69-1, seeking declaratory relief under the Uniform Declaratory Judgments Act ("UDJA"), N.J.S.A. 2A:16-50 to -62, and permanent injunctive relief under Rule 4:52.  The complaint asserted that Perna and Forchion were statutorily ineligible to be appointed Police Chief, given their lack of experience within the Borough's police force.

Plaintiff named only the Borough as a defendant and did not name Perna and Forchion as co-defendants.  Nor did the Borough implead Perna and Forchion as third-party defendants.  Perna and Forchion did not move to intervene in the litigation, either in the trial court or in this appeal.

Foregoing discovery, the Borough and plaintiff each filed motions for summary judgment. After hearing oral argument, Judge David W. Morgan granted plaintiff's cross-motion for summary judgment and declaratory relief under the UDJA, and denied the Borough's motion. A corresponding order was entered on February 25, 2015.

In interpreting the applicable statutes in his oral opinion, Judge Morgan concluded that those laws are "fairly clear" in prescribing that "individuals that are eligible for selection to the superior office of Chief of Police [in the Borough] are those individuals that are members of the [f]orce . . . for three years." Judge Morgan also found that the legislative history of the statutes supported plaintiff's position that the municipality must "pick somebody from the Department," and that in-house applicants should "not be competing with some other [potentially] very qualified candidates outside the Department."

During the course of his oral opinion, Judge Morgan mentioned the need to "enjoin the [Borough] from taking the steps [it] did [and not] let the process play out such that external individuals would be eligible[.]" However, in his signed order implementing his oral ruling (which was apparently drafted by plaintiff's counsel) the judge refers explicitly only

to declaratory relief. The order generically refers to granting plaintiff's summary judgment motion[5] on the issue of declaring plaintiff the sole statutorily eligible candidate, and denying the summary judgment motion of the Borough. The order contains no provision imposing injunctive relief upon the Borough. In any event, the Borough has deferred proceeding further with the testing or appointment process, pending the outcome of this appeal.

## II.

On appeal, the Borough argues that the trial court erred in its ruling for several reasons, two of them essentially procedural in nature and one of them substantive.

In particular, the Borough procedurally contends that the declaratory order should not have been issued without a showing by plaintiff of irreparable harm. The Borough also procedurally contends that the court erred in declaring the two outside applicants statutorily ineligible without them having been named as co-defendants in the complaint. Substantively, the Borough contends that the court's interpretation of N.J.S.A. 40A:14-129

---

[5] Counsel have furnished at our request copies of their summary judgment submissions in the trial court. The submissions reveal that plaintiff's notice of cross-motion for summary judgment did not refer to injunctive relief. Nor did plaintiff's brief in support of summary judgment request injunctive relief, although plaintiff had sought such a remedy in an earlier brief when he filed an initial order to show cause with his complaint.

and -130 is fundamentally flawed, that the statutes are anachronistic, and that it is arbitrary, capricious, and unreasonable for the law to deprive the Borough in this situation of the ability to consider external candidates for the position.

A.

The Borough's procedural arguments can be readily rejected. The UDJA provides a well-established mechanism for resolving an actual legal dispute that arises between adversarial parties. The purpose of the UDJA is "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." N.J.S.A. 2A:16-51. Toward that end, the UDJA is to be "liberally construed and administered" to effectuate its general purpose. Ibid.; see also N.J. Home Builders Ass'n. v. Div. on Civil Rights, 81 N.J. Super. 243, 251 (Ch. Div. 1963), aff'd, 45 N.J. 301 (1965). In particular, the UDJA is an especially appropriate method for resolving "any question of construction or validity arising under . . . [a] statute." N.J.S.A. 2A:16-53; see also Finkel v. Twp. Comm. of Hopewell, 434 N.J. Super. 303, 317 (App. Div. 2013) (citing this same provision in an opinion resolving the disputed meaning and application of various election statutes involving ballot questions).

As we recently recognized in Finkel, "the remedy of a declaratory judgment is 'circumscribed by the salutary qualification that the jurisdiction of the courts may not be invoked in the absence of an actual controversy.'" Id. at 318 (quoting N.J. Turnpike Auth. v. Parsons, 3 N.J. 235, 240 (1949)). Our courts generally will not entertain legal questions that are purely "academic." Id. at 315.

The trial court correctly recognized that the important issues of statutory construction under the police-appointment statutes here are not "purely academic." There is an actual, live controversy presented. For reasons that are not fully apparent, the Borough is not satisfied with the fact that plaintiff is the sole applicant for Chief from its police force who apparently meets (subject to the testing and interview process) the educational, licensing, and experience criteria of the job posting. The Borough would prefer to also consider external applicants for the position, such as Perna and Forchion, despite their not having served three years as officers within the Department. The Borough wishes to have all three applicants sit for the written test and to complete the other portions of the testing process.

Plaintiff, meanwhile, contends that the trial court was correct in finding that the statutes restricting eligibility to

candidates from within the police force are clear on their face. Plaintiff argues that it is a waste of time and public resources to have ineligible outsiders included in the testing and interview process. Plaintiff also urges that the court reject with finality the Borough's claims that these statutes are out of date, arbitrarily restrictive, and unworthy of enforcement.

We agree with plaintiff that there is a significant public interest to be served by resolving now the merits of the statutory questions presented here through the mechanism of declaratory relief. It would be unwise to have the parties, the police force, the applicant pool, and the citizens of the Borough left unsure about the contested statutory eligibility criteria while the hiring process goes forward. There is surely an "actual dispute" here that warrants resolution at this time in the public interest.

We reject the Borough's argument that the court's issuance of a declaratory order in this particular setting was unjustified because of an alleged lack of irreparable harm. For one thing, a demonstration of irreparable harm is not always required to obtain declaratory relief. In fact, nothing in the UDJA, a statute that must be liberally construed, requires such a demonstration.

Moreover, even if irreparable harm were a necessary element, the trial judge aptly recognized that prospective harm in this situation stems from concerns that the Borough must "comply with the law." See N.J. Dental Ass'n v. Metropolitan Life Ins. Co., 424 N.J. Super. 160, 165 (App. Div. 2012) (noting the propriety of a private cause of action that, in essence, seeks "to compel another private party to comply with a statute"), certif. denied, 210 N.J. 261 (2012).

We do not read Capibianco v. Civil Serv. Comm'n, 60 N.J. Super. 307, 313 (App. Div. 1960), a case cited in the Borough's reply brief, as stripping courts of the ability to issue declaratory relief that can help assure that a municipality is guided by appropriate statutory mandates in appointing a Police Chief. Id. at 312. In Capibianco, the plaintiff was temporarily appointed as Acting Chief of a municipal police department. Several years later, the municipality's city manager requested the State Civil Service Commission to administer an examination in order to evaluate other candidates for the permanent position. Id. at 312-13. Based on the test results, the city manager appointed another candidate Chief of Police. Id. at 313. The plaintiff filed an action in lieu of prerogative writs in the Law Division, challenging the city's actions and contending that his own appointment had been

permanent, rather than temporary, and that the examination process being used to replace him was invalid. Ibid.

The Law Division declined in Capibianco to enjoin the examination. Ibid. It then dismissed the complaint because plaintiff had not exhausted his administrative remedies. Id. at 314. The Commission thereafter ruled that the plaintiff's position had only been temporary, despite a salary increase he had received, and that the competitive processes used to appoint a permanent Chief were valid. Ibid. On appeal, we upheld the Commission's determination as being consistent with the applicable laws. Id. at 315-20.

Although our opinion in Capibianco mentions in passing that the Law Division judge had found that the plaintiff "would not suffer irreparable harm by the holding and taking of the examination," that observation in dicta does not invalidate the trial court's order in the present case. Id. at 313. There is no indication that the plaintiff's lawsuit in Capibianco was brought under the UDJA. Furthermore, that case did not involve the statutes at stake here, N.J.S.A. 40A:14-129 and -130. Nor did the plaintiff in Capibianco allege, as here, that the other applicants were statutorily ineligible because of a lack of prior service on the municipality's police force. In addition, the present case does not implicate the exhaustion of

administrative remedies. And, as we previously noted, the trial court's order being appealed contains no injunctive provisions. We therefore are unpersuaded by the Borough's reliance on Capibianco.

We also reject the Borough's contention that plaintiff's omission of Perna and Forchion as co-defendants requires dismissal of the complaint. We are mindful that the UDJA provides that "[w]hen declaratory relief is sought, all persons[6] having or claiming any interest which would be affected by the declaration shall be made parties to the proceeding." N.J.S.A. 2A:16-56. See also Gotlib v. Gotlib, 399 N.J. Super. 295, 313 (App. Div. 2008) (implementing this principle).

Although the Borough is correct that the court could not adjudicate the individual rights of the other candidates in their absence, plaintiff brought this action for declaratory relief under N.J.S.A. 2A:16-52 against the Borough. He clearly did so to assure that the Borough itself would not pursue an appointment process based upon an incorrect conception of the applicable statutes and their appoint-from-within eligibility requirements. The final declaratory order issued by the trial court was directed at the Borough, not at any other applicants.

---

[6] The Borough qualifies as a "person" under N.J.S.A. 2A:16-50, as it is a "municipal or other corporation of any character."

To be sure, it would have been more prudent and comprehensive for plaintiff to have named Perna and Forchion as additional defendants here, since their names and application status were known. Even so, we discern no actual prejudice from their omission from this lawsuit or, for that matter, from this appeal.

This litigation has been pursued in an open and public manner. We have little doubt that the case is a matter of some notoriety within the Department and the Borough. Perna and Forchion surely are aware that their testing process has not proceeded, yet they have not sought to intervene in the litigation. We do not fault them for remaining on the sidelines, given the expense and burdens of taking part in litigation of any kind.

In sum, a declaration and reaffirmation of the statutory restrictions that the Borough must heed in the hiring process can be fairly issued without requiring the participation of the other applicants. We therefore proceed to a review of the trial court's substantive decision on its merits.

### B.

As with any issue of statutory interpretation, courts must first examine "[t]he plain language of [each] statute" and "apply to the statutory terms the generally accepted meaning of

the words used by the Legislature." L.A. v. Bd. of Educ., 221 N.J. 192, 201 (2015) (quoting Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418 (2009)). "When the Legislature's chosen words lead to one clear and unambiguous result, the interpretative process comes to a close, without the need to consider extrinsic aids." Ibid. (quoting State v. Shelley, 205 N.J. 320, 323 (2011)).

When, as here, an issue concerns more than one statutory provision, "[r]elated parts of an overall scheme can . . . provide relevant context." Beim v. Hulfish, 216 N.J. 484, 498 (2014) (quoting N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 20 (2013)). Put another way, in interpreting the plain terms of a statute, a court must "read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005) (internal citations omitted)).

The plain language of the statutes before us is unequivocal. As we noted at the outset, N.J.S.A. 40A:14-129 provides, in pertinent part, "[i]n any municipality wherein Title 11 of the Revised Statutes is not in effect, and except in cities of the first and second class, a promotion[7] of any member

---

[7] The applicable local ordinance, Clayton, N.J., Code § 21-1, provides that "[t]he order of rank [in the police department] (continued)

or officer of the police department . . . to a superior position shall be made from the membership of such department or force." (emphasis added). N.J.S.A. 40A:14-130 drives the point home, in that it requires that such candidates have worked for the municipality's police department for at least three years.

A common sense reading of these statutes dictates that any candidate promoted to a superior position (here, the Chief of Police) must currently work in the municipality's police department and have three years of experience on the force as a police officer. The statutory language is plain, direct, and unqualified.

We find unpersuasive that the Borough's reliance on selected portions of Miller v. Township of Wayne, 154 N.J. Super. 247 (Law Div. 1977) and Juliano v. Borough of Ocean Gate, 214 N.J. Super. 503 (Law Div. 1987), requires deviation from the plain text of the statutes.

Miller does not advance the Borough's position. At most, Miller can be read to solidify the legal proposition that N.J.S.A. 40A:14-129 applies to the position of Chief of Police

(continued)
shall be in descending order: Chief of Police, Captain, Lieutenant, Sergeant, Corporal, Patrolman, Probationary Patrolman and Special Officers." We do not consider the statutes inapplicable because they refer to a "promotion" rather than an "appointment." In fact, the Borough makes no such argument.

in a non-civil service jurisdiction, such as the Borough here. Miller, supra, 154 N.J. Super. at 260. In Miller, the Law Division was asked to determine whether the mayor of Wayne could appoint a Chief of Police from outside the municipality. Id. at 248. Central to the discussion there, however, was whether the position of Chief of Police was akin to a department head ⸺ upon which the mayor would have the power to appoint under the Faulkner Act, N.J.S.A. 40A:69-1 to -210 ⸺ or whether the position of Police Chief was determined under N.J.S.A. 40A:14-129. Id. at 254-56.

Citing two existing ordinances stating that Wayne's business administrator (and not the mayor) had the right to choose the Police Chief, the Law Division in Miller rejected plaintiff's argument and determined that the two provisions (N.J.S.A. 40A:14-129 and the relevant provisions of the Faulkner Act) were not in conflict. Id. at 260. The court thus concluded that the Chief of Police's position was to be determined by reference to N.J.S.A. 40A:14-129. Id. at 262.

That narrow holding, as is relevant here, applies with equal force. As the Law Division noted in Miller, and contrary to the Borough's argument, "N.J.S.A. 40A:14-129 does not purport to strip [the municipality] of [its] power[,] [but] merely defines the group from which the appointment may be made."

Miller, supra, 154 N.J. Super. at 260 (emphasis added). The fact that the Borough here may prefer to not be bound by those constraints does not allow it to violate the law.

The Borough's reliance on Juliano is also unavailing. As in Miller, Juliano dealt with a situation where the plaintiff sought, among other things, to invalidate a municipality's Chief of Police appointment under N.J.S.A. 40A:14-129. Juliano, supra, 214 N.J. Super. at 505. Finding that neither the plain text of N.J.S.A. 40A:14-129 nor the legislative history for N.J.S.A. 40A:14-129's predecessor statute supported defendants' position, the Law Division noted in Juliano that, "[t]he obvious purpose of the statute is to reward good performance and inject merit into the promotion process in those municipalities not functioning under civil service regulations. In effect, the statute gives a protection similar to civil service procedures to guard employees against arbitrary action by the employer." Id. at 511.

The court's opinion in Juliano went on to note that it is "doubtful" that the Legislature intended to consider a candidate from outside the municipality "under any circumstances." Id. at 512. However, the court observed that "[the] issue need not be reached until it is determined by plenary hearing that there is

<u>no one within the [ ] Police Department</u> who wants the job and is qualified for it." <u>Ibid.</u> (emphasis added).

Here, there is at least one applicant, i.e., plaintiff, who has the requisite three years of experience within the Department and thus is statutorily eligible for consideration. We need not at this juncture pass upon whether extraordinary principles akin to the "doctrine of necessity" might allow the Borough to appoint a Police Chief from outside of its borders when no qualified internal applicants have applied. <u>See</u> <u>DePascale v. State</u>, 211 <u>N.J.</u> 40, 44-45 (2012) (recognizing general principles of necessity); <u>see also</u> <u>Williams v. State</u>, 375 <u>N.J. Super.</u> 485, 528-29 (App. Div. 2005) (same). All we are deciding here is that the Borough is bound by the strictures of <u>N.J.S.A.</u> 40A:14-129 and -130, and thus must confine its selection procedures to <u>statutorily-eligible</u> candidates.

That said, we must make very clear what we are not deciding in this opinion. We do not presume to make any determination as to whether plaintiff, despite his <u>statutory eligibility</u> derived from his years of service on the Borough's police force, possesses sufficient and appropriate <u>qualifications</u> to be appointed Chief of Police.

Given that plaintiff is the only internal candidate who met the criteria stated within the job posting, the Borough is free

to start the process anew and revise the qualifications to attempt to attract a wider span of internal applicants. The Borough also may wish, with the County Prosecutor's acquiescence, to continue with the extant supersession arrangement. Or, as was suggested at oral argument before us, the Borough may consider consolidating its small police force with that of a neighboring town. Other options not contrary to N.J.S.A. 40A:14-129 and -130 also may well exist, and we need not canvass them here exhaustively.

In affirming the trial court's decision, we do not comment on whether these statutes have become outdated or unwise with the passage of time. We also will not opine on whether it would be preferable if the statutory scheme permitted smaller towns such as the Borough to consider and appoint applicants who have served in law enforcement in other jurisdictions. That policy choice is reserved for the Legislature, which is, of course, free to modify or repeal these statutes at any time in the democratic law-making process.

The trial court's declaratory order is consequently affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3191-14T2