FRANK P. TOWNSEND, *ET ALS.*, PLAINTIFFS, v. TOWN-
SHIP OF PEQUANNOCK, *ET ALS.*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided August 9, 1957.

Civil action in lieu of prerogative writ.

*Messrs. Young and Sears,* attorneys for defendants (*Mr. Harry L. Sears* appearing).

*Mr. Nicholas S. Schloeder,* attorney for plaintiffs.

HALL, J. S. C. (orally). This is a taxpayer's suit in lieu of prerogative writ to set aside as invalid certain portions of an ordinance called "The Administrative Code" adopted by the council of the township on February 5, 1957. There is no factual dispute. The case presents only questions of law arising on the face of the ordinance. It comes before the court on the pleadings, the pretrial order, the ordinance itself, briefs and oral argument.

The electorate of Pequannock Township duly adopted Council Manager Plan "E" of the Optional Municipal Charter Law, which form of government went into effect January 1, 1957. The ordinance in question is the comprehensive local legislative act providing for the administration and organization of the government of the township under this new form of government. The Optional Municipal Charter Law, com-

monly known as the Faulkner Act, was enacted as *L.* 1950, *c.* 210; *N. J. S. A.* 40:69*A*–1 *et seq.* Council Manager Plan "E" provided for by Article 12*A* of the statute, *N. J. S. A.* 40:69*A*–114.1 to 114.5, inclusive, was added to the original law in 1953, *L.* 1953, *c.* 254. The article states that a municipality adopting it shall be governed by its provisions, together with those of Article 2 which is a general article entitled "Incorporation and Powers" Article 17 containing provisions applicable to all plans, and sections 86 through 98 of Article 9 dealing with the council and the manager, applicable by reference to all council-manager plans.

Note should at once be taken of certain pertinent general provisions of the law. *N. J. S. A.* 40:69*A*–26 provides that upon adoption of any optional plan, the municipality shall be governed by the plan adopted, the provisions of the act common to all plans, and to all applicable provisions of general law. General law is defined by section 28 as "any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities," plus some additional laws not presently pertinent.

The general powers conferred on all municipalities adopting any optional form of government, set forth in section 29, are important. For our purposes it is noted that thereby every such municipality shall "have full power to: (a) organize and regulate its internal affairs and to establish, alter, and abolish offices, positions, and employments and to define the functions, powers and duties thereof, and fix their terms, tenure and compensation. * * *"

Section 30 declares that this general grant of power is intended to confer the greatest possible power of local self-government consistent with the Constitution of this State, and that all grants of municipal power to such municipality, whether specific or general, shall be literally construed in favor of the municipality.

The philosophy and object of all the council-manager plans must be kept clearly in mind. In such a form of

government, under the act all powers of the municipality and the determination of all matters of policy are vested in the council, except as otherwise provided by the act or general law. See section 68.

Section 91 admonishes that it is the intention that the council shall act in all matters as a body and shall deal with the administrative service solely through the manager. The latter is by section 95 designated as the chief executive and administrative official of the township, responsible to the council for carrying out all policies established by it and for the proper administration of all affairs of the municipality within the jurisdiction of the municipality. The section grants to him numerous comprehensive powers through which to carry out such responsibilities, including appointment of all department heads, officers, subordinates and assistants, except when otherwise provided for in the act. These powers pertinent to the case at bar will hereafter separately be referred to.

New Jersey before 1950 had statutory provision for a municipal manager form of government, *R. S.* 40:79-1 *et seq.* The statutory provisions there relating to the respective powers and duties of the council and the manager are set forth in substantially similar language to that found in the Faulkner Act, especially sections 88 through 98 of the latter. Comparison aids interpretation. The language differences in the Faulkner Act provisions evince a legislative intent to give broader power to the manager as against the council than was given by the original Municipal Manager Act. The basic theory of any manager form of government is that there should be a distinct separation of policy determination, which resides in the council, and administration, which resides in the manager. See the final report of the New Jersey Commission on Local Government appointed pursuant to *Laws of* 1948, *Joint Resolution No. 1*, dated February 1949, at *pages* 24 and 66, and the second report of the same commission dated February 1950, *page* 7.

This fundamental philosophy must be kept continuously in the forefront in considering the questions raised in this

case and in interpreting the pertinent statutory sections and passing on the provisions of the ordinance which are attacked. With this background and statement of general principles, I proceed to consider the various ordinance sections challenged by the plaintiffs.

They first attack as invalid paragraph K of section 5 of the ordinance. Section 5 is entitled "The Council," and paragraph K is captioned "Contracts." It reads:

"Upon contracts let by open competitive bidding the council shall, upon recommendation of the township manager, with respect to all contracts other than public works contracts, and upon recommendation of the manager and the township engineer with respect to public works contracts, let the contract in the manner prescribed by law."

The objection is that it is violative of *subsection* (*d*) of *N. J. S. A.* 40:69A–95, which provides:

"The municipal manager shall: * * * negotiate contracts for the municipality subject to the approval of the municipal council, make recommendations concerning the nature and location of municipal improvements, and execute municipal improvements as determined by the municipal council."

It is assumed that the phrase in the ordinance "public works contracts" refers to contracts for public improvements, as distinct from contracts for purchases. The plaintiffs say the ordinance puts the situation in the reverse of that called for by the statute, that is, that under the statute the manager is the one who fixes the terms and conditions of all contracts, subject to approval of the council, whereas under the ordinance it might well be said that the council does this and the manager can only recommend. I think this is largely a question of expression and a distinction without a difference, as far as the phrase "recommendation of the manager" is concerned. Although the language in the ordinance is different from that in the statute, I feel that the expressions mean the same thing and the ordinance language can stand as valid but can only be interpreted and applied to concrete actions in the manner expressed by the statute.

The legal situation differs with respect to the requirement of the recommendation of the township engineer in the case of public works contracts. Now, the word "recommend" has a dictionary definition, "to commend or bring forward explicitly as meriting consideration, acceptance or adoption, to make a commendatory statement concerning." This necessarily implies a favorable or favoring report and precludes an unfavorable or opposing report. The word "recommendation" has been so interpreted when used in other parts of our municipal law, for example, *N. J. S. A.* 40:55-39(d) relating to zoning variances, where the statute says that a variance shall be granted when the board of adjustment recommends it and the governing body approves the recommendation. It is well established that a governing body cannot grant a variance unless the board of adjustment makes an affirmative, favorable recommendation. So here, I think the phrase to the effect that the council shall, upon the recommendation of the township engineer as well as the manager with respect to public works contracts, let the contract, would have to be interpreted to mean that the manager could not negotiate the contract nor could the council award it unless the engineer affirmatively approved. This is in violation of the intent of the statute, and the provision requiring the recommendation of the township engineer as a condition precedent to the awarding of public works contracts is declared invalid. This is not to say that it would not be most feasible for policy and administration for the manager, in his administrative capacity, to require a report from the engineer on the proposed public works contracts, and to submit that report with the manager's comments thereon to the council when he submits the proposed contract for approval.

█ The other objections of the plaintiffs relate to ordinance provisions concerning appointment of municipal officials. As I have stated, the statute in specifying the powers of the manager in section 95(c) says:

"The municipal manager shall: * * * appoint and remove a deputy manager if one be authorized by the council, all depart-

ment heads and all other officers, subordinates, and assistants for whose selection or removal no other method is provided in this article, except that he may authorize the head of a department to appoint and remove subordinates in such department, supervise and control his appointees, and report all appointments and removals at the next meeting thereafter of the municipal council."

The only statutory provision concerning any power of appointment in the council is found in section 89, which says that the municipal council shall appoint a municipal manager and municipal clerk. Both of such offices may be held by the same person. Also, the council may provide for the manner of appointment of a municipal attorney, any planning board, zoning board of adjustment, or personnel board in the municipality, and may create commissions and other bodies with advisory powers.

The meaning of the last sentence, that the council may provide the "manner of appointment" of the attorney and certain boards and commissions is not clear. It does not have to be decided in this case. The important thing is that the general power of appointment is given the manager with exceptions reposed in the council, either directly or by being able to prescribe the manner of appointment. This carries out the basic theory of the manager form of government, since the officers and boards specified in section 89, that relating to manner of appointment by the council, are not in the administrative field except as to the manager himself and the clerk. The manager is the chief executive and administrative officer of the municipality, and the statutory sections concerning appointments must be construed in that light. That this was the intention of the law is also apparent in the statements in the report of the Commission on Municipal Government previously cited. See the final report, page 66, and the second report, page 8.

Moreover, in the original Municipal Manager Act, particularly *R. S.* 40:81–11 and 40:82–4(*b*), we find substantially analogous provisions, and our courts have held under them that an appointment of a fireman by the council was illegal. The power of appointment was vested in the manager.

*Ware v. Board of Com'rs of City of Cape May,* 120 *N. J. L.* 48 (*Sup. Ct.* 1938), affirmed 121 *N. J. L.* 545 (*E. & A.* 1939). Justice Heher's decision for the Supreme Court in that case said, 120 *N. J. L.* at *page* 51:

"Councilmanic interference with the exclusive functions of the city manager is violative of the very essence of this statutory system of government. The basic policy is expressed in terms that admit of no doubt as to the legislative purpose. All municipal servants shall be selected 'with reference to their qualifications and fitness for the public service required of them, and without reference to their political faith or affiliations.' *Section* 901, *article* 9, *R. S.* 1937, 40:83–1. * * * The Legislature has, with certain exceptions, intrusted the administration of this policy to the manager. That is one of the outstanding features of this modern scheme of local government. See, also, *Section* 708, *article* 7, *R. S.* 1937, 40:81–16."

The Court of Errors and Appeals in its affirming opinion said:

"It is urged that section 805, (*R. S.* 40:82–4(*j*)) provides that the municipal manager shall in all matters act under the direction and supervision and subject to the approval of the municipal council, and that this confers upon the council a supervisory control over appointment, although it is expressly conceded that no other method of appointment is authorized by the act than by the manager, under section 804(b). But we agree with the Supreme Court that this general language of section 805 should not be read as affecting the specific power of appointment contained in section 804(b) and that independent appointment by the manager is the essence of the legislative scheme."

The principles so stated are apposite to the instant case in view of the substantially similar sections in the Faulkner Act. In this connection the plaintiff attacks paragraph O, entitled "Appointments," section 8 of the ordinance which is captioned "Township Manager and General Administrative Regulations." That paragraph reads:

"All appointments made by the manager shall be subject to confirmation by the council. However, an office or position shall not be left vacant by virtue of the manager's failure to appoint or the council's failure to confirm. If such failure continues for forty

days after the date that the office or position first became vacant, then the council shall have the right to fill said office or position by majority vote of the entire council membership."

I have not the slightest doubt that paragraph O is illegal as an invasion of the manager's power of appointment given him under the statute and the ordinance. In view of the explicit statutory provisions that cannot be saved by the general expression of powers granted to the municipality by *N. J. S. A.* 40:69A–29(a), the paragraph is declared invalid.

By this ordinance, by various provisions of sections 8 through 19, the appointment of certain named officials not specified in section 89 of the statute is placed in the council rather than in the manager. The plaintiffs attack only sections 12 and 18, placing the appointments of the township engineer and the dog warden, respectively, in the council. The defendant admits that section 18 is invalid in this respect but seeks to justify such a manner of appointment of the engineer by reason of the nature of the office, that is, that he is a professional consultant to the municipality not on a full-time salary basis, presumably similar to the attorney whose appointment is given to the council. But the two sections, 89 and 95(c), read together, are clear and any change is strictly in the legislative and not the judicial field. The sections are invalid insofar as they place the appointive power to these officers in the council. That power by law resides in the manager and the ordinance cannot alter it.

The plaintiffs also object to paragraph F of section 8 of the ordinance on the same general grounds. That paragraph reads:

"Prior to exercising its charter power to appoint any other municipal official or employee, the council shall request the township manager to study the question and report its recommendation. Such recommendation shall be a confidential work paper for the use of the council exclusively and shall not be a matter of public record."

I see no valid objection to this paragraph but it can, of course, only apply to those officers where the council has

the power of appointment under *N. J. S. A.* 40:69A–89. Practically speaking, it may well have little effect or application in view of my striking down paragraph O of the same section.

Finally the defendants attack the provisions of sections 12 and 18 relative to the offices of township engineer and dog warden apart from the question of the power of appointment which I have just passed upon. I should interpolate that in this discussion I am assuming that the office of dog warden is effectively created by some other ordinance of the township, since it is not found in the statute. The sections each provide that these officials shall be appointed for a term of two years. Now, the plaintiffs first say as to the engineer that assuming any prescription of the term is valid, it would have to be for three years because *R. S.* 40:145–12 and 13, sections of the township law, so provide. This is not so because the township law is not a general law as defined in section 40:69A–28 of the Faulkner Act, and no general law is cited to me. But the plaintiffs more fundamentally say that no term can be prescribed by ordinance for these offices because such conflicts with the power given the manager by section 95(*b*) to remove his appointee, a fixed term preventing removal during the period of it.

The defendant seeks to sustain the provision as to term under section 29(*a*) of the Faulkner Act previously quoted, which grants the municipality full power to establish, alter and abolish offices, positions and employments, and to define the functions, powers and duties thereof and fix their term, tenure and compensation. Now, with this section must be read section 88, which says that all powers in the municipality and the determination of all matters of policy shall be vested in the municipal council, except as otherwise provided by that act or by general law, in other words, for the purposes of our case, except that it may have been otherwise given by this law, this statute, to the manager.

This question is a very difficult one and has far-reaching implications concerning all municipal officers, positions and employments in Faulkner Act municipalities. It has many

facets not involved or not fully argued here. It is to be noted that the powers given to the manager in section 95(c) are to appoint and remove. No mention is made as to power given him to fix term, tenure or compensation. Certainly with respect to compensation, the power to fix that must be held to reside in the council by virtue of section 88, along with the creation and abolition of officers, positions and employment. If we say the power to fix term and tenure likewise is in the council, we render impotent the manager's power to remove which is expressly given him by specific statutory declaration. Such power to remove is also essential to the full realization of the philosophy and basic theory of separation of policy-making functions from those which are executive and administrative under the council-manager form of government. So I think the legislative intent expressed in the law in its present form has to be said to be that the power to fix the term of the engineer and the dog warden in this township resides in the manager, except should the term of said officers be fixed by other general law, none of which is cited to me. Some legislative clarification might well be suggested to be indicated. The provisions of sections 12 and 18 fixing two-year terms for these offices are declared invalid.

There will be no costs.