**James McKEEVER, Plaintiff,**

**v.**

**TOWNSHIP OF WASHINGTON, Mayor and Council of the Township of Washington and Randee Davidson, Defendants.**

**Civil Action No. 01–0712.**

United States District Court,
D. New Jersey.

Aug. 7, 2002.

Mark Cimino, Esquire, Deptford, NJ, for Plaintiff.

Michael J. Parlavecchio, Esquire, Genova, Burns & Vernoia, Livingston, NJ, for Defendants.

### OPINION

RODRIGUEZ, District Judge.

This matter has come before the Court on Defendants' motion and Plaintiff's cross-motion for summary judgment pursuant to Fed.R.Civ.P. 56. Having considered the briefs of the parties, and for the reasons below, the Court will deny the Defendants' motion and grant in part and deny in part Plaintiff's cross-motion.

### BACKGROUND

Plaintiff instituted the complaint in this case as a result of his December 31, 2000 termination from employment by Defendant Township of Washington [1], Mayor and Council of the Township of Washington, and Randee Davidson.

In 1984, the Township Committee of the Township of Washington passed Ordinance 19–1984 which established tenure in the position of the Superintendent of Public Works pursuant to N.J. Stat. Ann. § 40A:9–154.6. (Defendant's Statement of Material Facts, ¶ 2; Plaintiff's Statement of Material Facts, ¶ 26.) Subsequently in 1985, the Township Committee established a new Administrative Code by Ordinance 1–1985 and is now governed by the Mayor Council Plan under the Optional Municipal Charter Law set forth in N.J. Stat. Ann. § 40:69A–1 to 40:69A–210, also known as the Faulkner Act. (Defendant's Statement of Material Facts, ¶ 3; Plaintiff's Statement of Material Facts, ¶ 27.)

In 1989, Plaintiff was appointed as the Director of Public Works by then Mayor Gerald J. Luongo. (Defendant's Statement of Material Facts, ¶¶ 4, 5; Plaintiff's Statement of Material Fact, ¶ 1.) Plaintiff was reappointed by Mayor Luongo in 1992 and 1996. (Plaintiff's Statement of Material Facts, ¶ 6.) During this time, Plaintiff became State certified as a public works manager and attended classes relating to public works. (Plaintiff's Statement of Material Facts, ¶ 2.) Plaintiff was employed full-time as the Director of Public Works/Director of the Department of Municipal Support Services by the Township of Washington from June, 1989 until his termination. (Plaintiff's Statement of Material Facts ¶¶ 6, 8.)

As the Director of Public Works, Plaintiff was responsible for the daily operations of the Department, including snow and leaf removal, flooding emergencies, trash removal, and park and recreational needs. (Defendant's Statement of Material Facts, ¶ 8; Plaintiff's Statement of Material Facts, ¶ 3.) Sometime in the late 1990s, the Department of Public Works and the Department of Municipal Support Services were consolidated into one de-

---

1. The Township of Washington is a Municipal Corporation located in the County of Gloucester, State of New Jersey. (Defendant's Statement of Material Facts, ¶ 1.)

partment. (Plaintiff's Statement of Material Facts, ¶ 2.) As Director of the combined Department of Municipal Support Services, Plaintiff was responsible for the same daily operations as the previous Department of Public Works. (Defendant's Statement of Material Facts, ¶ 7; Plaintiff's Statement of Material Facts, ¶ 2.) Plaintiff reported directly to the mayor and acted as a "go-between between the public and the administration." (Defendant's Statement of Material Facts, ¶¶ 11, 14; Plaintiff's Statement of Material Facts, ¶¶ 3, 4.) In 1997, Mayor Luongo also appointed Plaintiff as Acting Mayor pursuant to N.J. Stat. Ann. § 40:69–A–1 and Article 2, Section 2.6 of Township Ordinance 1–1985 during the Mayor's absence. (Defendant's Statement of Material Facts, ¶ 15.)

In November 2000, Defendant Randee Davidson, a Democrat, was elected mayor of the Township of Washington, defeating the incumbent Mayor Luongo, a Republican. (Plaintiff's Statement of Material Fact, ¶ 7.) Shortly after the election, Plaintiff received a letter from Defendant Davidson stating that he would not be reappointed as the Director of the Department of Municipal Support Services and his service with the Township of Washington would end December 31, 2000. (Defendant's Statement of Material Facts, ¶ 16; Plaintiff's Statement of Material Facts, ¶ 8.) In her deposition, the Defendant stated that the decision to not reappoint Plaintiff was made because it was "time for change"; in addition, she cited poor job performance. (Defendant's Statement of Material Facts, ¶¶ 23, 24; Plaintiff's Statement of Material Facts, ¶¶ 10, 16.)

In 2001, Defendant Davidson appointed Kenneth Patrone as Director of the Department of Municipal Support Services. (Defendant's Statement of Material Facts, ¶ 27; Plaintiff's Statement of Material

Facts, ¶ 19.) Prior to his appointment, Patrone had been employed by the Township of Washington as a craft mechanic and laborer. (Defendant's Statement of Material Facts, ¶ 18; Plaintiff's Statement of Material Facts, ¶ 20.) Currently, Patrone is not a State certified public works manager, but he began taking classes for certification about two years ago. (Plaintiff's Statement of Material Facts, ¶ 25.) Patrone also runs a catering business which has provided catering to both Democratic and Republican functions. (Plaintiff's Statement of Material Facts, ¶¶ 22, 23.)

Plaintiff's suit is based on a violation of 42 U.S.C. § 1983. He alleges that he was not reappointed as the result of political discrimination in violation of his guaranteed rights under the First Amendment of the United States Constitution and Article One of the New Jersey Constitution (Count One). Next, Plaintiff alleges that he has a property interest in his job as the Director of the Department of Municipal Services and thus Defendants deprived him of his due process rights in derogation of the United States Constitution and the New Jersey Constitution. (Count Two–Count Five.)

Both parties have now moved for summary judgment.

### SUMMARY JUDGMENT STANDARD

This Court will enter a summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Anderson v. Liber-*

*ty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. This Court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party when determining whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Black v. Indiana Area School Dist.,* 985 F.2d 707, 709 (3d Cir.1993).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact to the court. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be satisfied by showing that the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Once the moving party has met its burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue to be decided by a trier of fact. *Id.* at 324, 106 S.Ct. 2548; *Maidenbaum v. Bally's Park Place, Inc.,* 870 F.Supp. 1254, 1258 (D.N.J. 1994).

On a motion for summary judgment, this Court does not weigh the evidence to determine the truth of the matter but instead decides whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 242–43, 106 S.Ct. 2505; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

## DISCUSSION

### A. Due Process

The Plaintiff contends that, as a matter of law, Defendant deprived him of due process rights in failing to reappoint him to the position of Director of the Department of Municipal Support Services and failing to give him a hearing as required by Ordinance 19–1984.

■ The Due Process Clause of the Fourteenth Amendment mandates that no "State shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. In order to be protected by the Due Process Clause in employment cases, a plaintiff must prove a property interest in continued employment by a public agency. *Latessa v. New Jersey Racing Com'n,* 113 F.3d 1313, 1318 (3d Cir.1997). A property interest can be created by ordinance, but must have an independent source of entitlement found in State law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Brown v. Trench,* 787 F.2d 167, 170 (3d Cir.1986).

1. Did Plaintiff possess a property interest in his position as Superintendent?

■ In the present case, the Plaintiff has argued that he retains a property interest in his job by virtue of N.J. Stat. Ann. § 40A:9–154.6, which allows municipalities to give tenure to persons who hold the office of municipal superintendent of public works continuously for five years or more. The statute reads:

A person holding office, position or employment as full-time municipal superintendent of public works who has held the office, position or employment con-

tinuously for 5 years or more shall continue to hold the office, position or employment, notwithstanding he is serving for a fixed term, during good behavior and efficiency and shall not be removed therefrom for political or other reasons except for good cause, upon written charges filed with the municipal clerk and after a public, fair and impartial hearing; except that the governing body of the municipality shall first pass an ordinance authorizing the tenure of office herein provided. The person may be retired when he shall have attained 70 years of age.

Pursuant to N.J. Stat. Ann. § 40A:9–154.6, the Township of Washington passed Ordinance 19–1984 granting tenure to the municipal superintendent of public works in addition to accepting the definition of the superintendent's job found in N.J. Stat. Ann. § 40A:9–154.5. Ordinance 19–1984 reads:

A Municipal Superintendent of Public Works means the officers or employee of a municipality whose duties include supervising the care and maintenance of streets, roads, avenues, public buildings, public places, sewers and motor vehicles of the municipality notwithstanding the job title given the office or position. Any person holding the office, position or employment of full time Municipal Superintendent of Public Works continuously for five (5) years or more shall be tenured in the said office notwithstanding he is serving for a fixed term. He shall not be removed from said office for political or other reasons except for good cause shown and upon hearing. The person may be retired when he shall have attained seventy (70) years of age.

The plain meaning of both N.J. Stat. Ann. § 40A:9–154.6 and Township Ordinance 19–1984 indicates an intent to create an entitlement to the job of Superintendent of Public Works for any superintendent employed over five years or more. This entitlement creates a property interest in the position clearly established in State law.

2. Did the adoption of an administrative code with the Mayor–Council Plan implicitly repeal the tenure attached to the Superintendent's position?

■ Defendants argue that even if the municipality created a property interest, such an entitlement was repealed in the Township of Washington in 1985 with the passage of Township Ordinance 1–1985 because Ordinance 1–1985 established an administrative code as provided under the Mayor Council Plan of the Optional Municipal Charter Law, N.J. Stat. Ann. § 40:69A–1 to 40:69A–210. Article 12.3 of Ordinance 1–1985 provides that:

All ordinances and resolutions adopted before the effective date of this code shall remain in full force and effect until repealed or amended provided, however, that any found to be inconsistent with the charter or this code or law shall be considered repealed or amended to comply with existing law to the extent of any such inconsistency.

Defendants contend that Ordinance 19–1984 is inconsistent with Ordinance 1–1985. Specifically, Defendants argue that the tenure ordinance is inconsistent with Ordinance 1–1985 § 5.3A and N.J. Stat. Ann. § 40:69A–43(b) which provides:

Each department shall be headed by a director, who shall be appointed by the mayor with the advice and consent of the council. Each department head shall serve during the term of office of the mayor appointing him, and until the appointment and qualification of his successor.

Ordinance 1–1985 incorporated N.J. Stat. Ann. § 40:69A–43(b) into the administrative code of the Township of Washington. Ordinance 19–1984 was enacted prior to Ordinance 1–1985, pursuant to N.J. Stat. Ann. § 40A:9–154.6. This Court must now determine whether the two statutes at issue, N.J. Stat. Ann § 40:69A 43(b) and N.J. Stat. Ann. § 40A:9–154.6, can be construed together in a harmonious manner. This Court believes that they can.

Regulation of the internal affairs of municipalities may be effected by general laws enacted by the Legislature. N.J. Const. art. IV, § VII, par. 9. Each municipality governed by an optional form of government under the Faulkner Act is subject to the provisions of the act or other general laws. N.J. Stat. Ann. § 40:69A–29(a). A general law is deemed to be any law or provision of law, not inconsistent with the Faulkner Act, heretofore or hereafter where its terms are applicable or available to all municipalities. N.J. Stat. Ann. § 40:69A–28. The Legislature is presumed to be familiar with its own enactments and the judicial decisions relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose. *Planning Board of the Township of West Milford v. Township Council of the Township of West Milford,* 123 N.J.Super. 135, 301 A.2d 781, 789 (1973) (citing *Wright v. South Orange,* 79 N.J.Super. 96, 190 A.2d 675 (1963)). The courts have the duty of reconciling both statutes to give effect to both expressions of the lawmakers' will. *State v. Federanko,* 26 N.J. 119, 139 A.2d 30 (1958).

In 1950, the Faulkner Act was created to give municipalities the greatest amount of power to self-govern under the New Jersey Constitution. N.J. Stat. Ann. 40:69A–30 [2] Among those powers, the mayor was given the power to appoint the director of each department, with the advice and consent of the council. N.J. Stat. Ann. § 40:69A–43(b).

In *Miller v. Township of Wayne,* 154 N.J.Super. 247, 381 A.2d 94 (1977), the mayor sought declaratory judgment on the issue of whether he could appoint a new police chief from outside the present police department pursuant to his power under N.J. Stat. Ann. § 40:69A–43(b). The court found that N.J. Stat. Ann. § 40A:14–129, specifying that only a patrolman in the same department or force could be eligible for the position, was not inconsistent with the Mayor's appointment powers under N.J. Stat. Ann. § 40:69A–43(b). *Miller,* 381 A.2d at 98. The court found that such a general law is not inconsistent if it limits the mayor's power to form a pool of candidates from which to choose a new police chief. *Id.* at 99. A general law that does not purport to strip the appointer of his power will be construed in a harmonious manner. *Id.* at 101. In contrast, courts have found statutes or ordinances which attempted to shift the appointment power, to be general laws or ordinances inconsistent with the Faulkner Act. *See Indyk v. Klink,* 121 N.J.Super. 314, 297 A.2d 5 (1972) (mayor and department head have

2. N.J. Stat. Ann. § 40:69A–30 reads:
    The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other general law shall not be construed in any way to limit the general description of power contained in this article, and any such powers conferred in general terms by this article. All grants of municipal power to municipalities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed, as required by the Constitution of this State, in favor of the municipality.

power to appoint town engineer and town attorney; ordinance giving town council power was ultra vires); *Townsend v. Pequannock,* 47 N.J.Super. 294, 135 A.2d 708 (1957) (ordinance of township which had adopted council-manager form of government was invalid where it gave authority to appoint township engineer to council instead of the town-manager).

The facts of the present case may be viewed as analogous to the situation presented in *Miller,* where a State court limited the number of applicants a mayor could review for the position of police chief thereby finding that two New Jersey statutes can construed in a harmonious manner. In doing so, that court recognized that statutes that shaped the mayor's power to appoint, but did not the power away, were not inconsistent with aims of the Faulkner Act. In the present case, the power of appointment held by the mayor of the Township of Washington will depend upon whether N.J. Stat. Ann. § 40:69A–43(b) and N.J. Stat. Ann. § 40A:9–154.6 can be construed in a harmonious manner. The mayor's power to appoint will be shaped based on the time and circumstance found in N.J. Stat. Ann. § 40A:9–154.6 and Ordinance 19–1984. This power to appoint as applied to the Director of the Department of Municipal Support Services would be instructed by statute only if an ordinance is passed by the town council, signed by the mayor, and the Director has been employed over five years. As in *Miller,* this reading will not strip away the mayor's power to appoint but would direct how that appointment power could be used.

In support of the argument that the present ordinance is inconsistent, Defen-

dants cite to *Mele v. Fahy,* 579 F.Supp. 1576, 1580 (D.N.J.1984), which ruled that the clear intent of N.J. Stat. Ann. § 40:69A–43(b) was to have "department heads serve *only* during the term of office of the mayor appointing them." *Id.* (quoting *Miller,* 381 A.2d at 101). The plaintiff in that case argued that he was denied due process when the mayor failed to follow the removal procedures of department heads as outlined in N.J. Stat. Ann. § 40:69A–43(c).[3] The court ruled that the hearing procedures under N.J. Stat. Ann. § 40:69A–43(c) were only intended for removal of department heads appointed by the same mayor seeking to dismiss them from office. The court found if subsection (c) were held to be applicable to all department heads, "a new mayor's wish to appoint department heads compatible with his policies could be frustrated by a two-thirds vote of the city council." *Mele,* 579 F.Supp. at 1580.

The court also ruled that the police officer plaintiff did not have a property interest in continued employment as Police Director merely by virtue of having signed a written contract extending his term of office. *Id.* at 1581. Either ground, the lack of statutory authority to allow a contract to extend the term of office or the lack of authority outside N.J. Stat. Ann. § 40:69A–43(c), supported the finding that the plaintiff was not denied due process.

In the present case, however, Plaintiff is not arguing that he was denied due process under N.J. Stat. Ann. § 40:69A–43(c), but rather under the separate statutory authority of a tenure statute. Section 40:69A–43(c) is applicable in limited instances where the mayor seeks to remove his or her own appointees. In contrast,

**3.** N.J. Stat. Ann. § 40:69A–43(c) reads: "The mayor may in his discretion remove any department head and, subject to any provisions of law concerning term of office or tenure, any other municipal executive officer who is not a subordinate departmental officer or employee, after notice and an opportunity to be heard."

department heads protected by tenure statutes must look to the dismissal procedures and protections as defined in specific statutes and ordinances granting tenure protection.

Tenure statutes, in this jurisdiction, have not been examined to determine if they are consistent with the Faulkner Act. Both state and federal case law using tenure statutes to protect property interests in employment have implied that such statutes should be construed harmoniously with the Faulkner Act. For example, in *Hutt v. Robbins,* 98 N.J.Super. 99, 236 A.2d 172 (1967) the court held that a department head could dismiss a subordinate with the mayor's approval so long as no "tenure statute" intervened. *Hutt* 236 at 174–175. In so ruling, the court examined the subordinate position and determined that tenure could not be established by the Civil Service Act or by "other general laws." *Id.* In *Hutt,* the Plaintiff challenged his dismissal from the office of the municipal solicitor in the Township of Woodbridge. The Township of Woodbridge has been under the Mayor Council form of government found in the Faulkner Act since 1964. *Id.* at 173. The court's reliance on its search for a general tenure law indicates that such a law could be found consistent with the Faulkner Act if such a law was applicable.

In *Zold v. Mantua,* 935 F.2d 633 (3d Cir.1991), the Third Circuit found that because a town clerk's position was tenured under N.J. Stat. Ann. § 40A:9–133.7, a deputy town clerk could not be fired for political cause. 935 F.2d at 638. Writing for the court, then Chief Judge Sloviter noted the legislative history of the 1980s indicated that the New Jersey Legislature began enacting statutes to "professionalize" the office of the municipal clerk. *Id.* at 639. These statutes granted the municipal clerk tenure and required all clerks to

become certified. *Id.* at 638. The decisive factor in determining whether the plaintiff was fired in violation of her First Amendment rights was the existence of a tenure statute. No mention was made that such a tenure statute could be deemed invalid. *Id.*

Finally, the legislative intent of other New Jersey tenure statutes suggests the New Jersey Legislature wanted tenure statutes to affect the provisions of the Faulkner Act. In *Cole v. Township of Roxbury,* 257 N.J.Super. 108, 607 A.2d 1366 (1992), the court determined that the position of a township's chief financial officer had received tenure pursuant to N.J. Stat. Ann. § 40A:9–140.8 as existed in 1977. The original 1977 statute read:

> Notwithstanding the provisions of any other law to the contrary, every person who shall have served as the municipal finance officer of any municipality in this State, *except any municipality having adopted any of the plans under articles 7 (Major Council Plan E) and 8 (Major Council Plan F) of the "Optional Municipal Charter Law,"* for a period of not less than 5 consecutive years and who is a holder of a municipal finance officer certificate issued in accordance with P.L.1971, c. 413 (C. 40A:9–140–1 et seq.) shall be granted tenure of office.

(Emphasis added.) N.J. Stat. Ann. § 40A:9–140.8 was later revised to take out the exception provision due to Major Council Plan E and F's repeal by the New Jersey State Legislature in 1982. The 1977 version indicates that the tenure of the township financial officer was applicable to all plans in the Faulkner Act both before and after the repeal of Plans E and F in 1982. By including this language, the New Jersey State Legislature intended tenure statutes to be consistent with and applicable to the Faulkner Act.

The enactment of the new administrative code in the Township of Washington cannot be considered a repeal of Ordinance 19–1984 because Ordinance 19–1984 is not necessarily inconsistent with the Faulkner Act and the new administrative code as defined in Township Ordinance 1–1985. N.J. Stat. Ann. § 40A:9–154.6 does not take away the mayor's power to appoint under N.J. Stat. Ann. § 40:69A–43(b), nor does it seek to establish a property interest under N.J. Stat. Ann. § 40:69A–43(c) as rejected by *Mele*. The statute gives municipalities additional power, consistent with the Faulkner Act's aim of conferring on municipalities the greatest power to self-government under the New Jersey Constitution, to pass a tenure ordinance to create an entitlement to the job of Superintendent of Public Works. Ordinance 19–1984 was enacted pursuant to this grant of power. Currently, the State has given tenure to municipal clerks (N.J.Stat.Ann. § 40A:9–133.7); municipal chief financial officers (N.J.Stat.Ann. § 40A:9–140.8); municipal tax collectors (N.J.Stat.Ann. § 40A:9–145); and municipal treasurers (N.J.Stat.Ann. § 40A:9–152), in addition to municipal superintendents of public works. Present case law suggests that these tenure statutes are not inconsistent with the Faulkner Act.

N.J. Stat. Ann. § 40A:9:154.6 is a general law as defined by the Faulkner Act, because the tenure statute pertaining to the Superintendent of Public Works is not inconsistent and applies to all municipalities. N.J. Stat. Ann. § 40:69A–28. If an ordinance has been passed pursuant to N.J. Stat. Ann. § 40A:9–154.6, it must be followed by municipalities operating under the provisions of the Faulkner Act whether or not passage of the ordinance granting tenure was accomplished before or after adoption of a new administrative code.

As a matter of law, Ordinance 19–1984 is still in effect in the Township of Washington. In December 2000, Plaintiff had been employed by the municipality for about eleven years and as a result qualified for tenure in the position of Director of the Department of Public Works/Director of the Department of Municipal Support Services. Since Plaintiff meets the requirements for tenure, he has established a property interest in his continued employment.

3. What process was Plaintiff entitled to before he could be terminated?

■ Plaintiff was not given a hearing prior to his dismissal as required by Ordinance 19–1984. Therefore, he was denied his due process rights under the fourteenth amendment. As set forth above, Ordinance 19–1984 provides that a tenured Municipal Superintendent of Public Works "shall not be removed from said office for political or other reasons except for good cause shown and upon hearing." Even if the Township of Washington could prove that good cause existed for Plaintiff's termination, it still failed to afford him a hearing. The Defendants therefore have failed to provide Plaintiff with the procedural due process to which he was entitled. As a result, Plaintiff's motion for summary judgment with respect to his due process claim will be granted.[4]

## B. Political Discrimination

In 1976, the Supreme Court held that the dismissal of certain public employees solely based on partisan political affiliation

---

**4.** Plaintiff's complaint also contains three additional counts that allege a "denial of substantive and procedural due process." Since the Court has found a denial of due process based on the validity of Ordinance 19–1984, it will not address the validity of the other counts alleged.

infringes upon first amendment rights of belief and association. *Elrod v. Burns,* 427 U.S. 347, 349, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Employees determined to hold jobs that do not have policy-making or confidential functions cannot be discharged on the sole ground of political beliefs. *Id.* at 375, 96 S.Ct. 2673 (Stewart, J., concurring).

An exception can be made "if an employee's private political beliefs would interfere with the discharge of his public duties." *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The Supreme Court explained that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. 1287. In such a case, the first amendment would not be offended if the defendant can demonstrate "an overriding interest" that party affiliation is an appropriate requirement of the office and such a difference would be highly likely to render an official ineffective in carrying out his or her duties and responsibilities. *Elrod,* 427 U.S. at 368, 96 S.Ct. 2673; *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Ness v. Marshall,* 660 F.2d 517, 521 (3d Cir.1981); *Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 395 (3d Cir.1998). The potential that an employee may cause havoc is not a sufficient basis for holding the employee can be hired or discharged because of his or her political affiliation. *Armour v. County of Beaver Pennsylvania,* 271 F.3d 417, 430–31 (3d Cir.2001).

▮ A political discrimination case employs similar, though not identical, burden-shifting mechanisms as those used in other employment discrimination contexts, such as Title VII cases. *Stephens v. Kerrigan,* 122 F.3d 171, 176 (3d Cir.1997); *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993). To make out a prima facie case, public employees who claim that they suffered from an adverse employment action based on their exercise of a constitutional right must show that: (1) they worked for a public agency in a position that does not require a political affiliation; (2) they were engaged in constitutionally protected conduct; and (3) the conduct was a substantial or motivating factor in the government's employment decisions. *Robertson v. Fiore,* 62 F.3d 596, 599 (3d Cir.1995); *Kerrigan,* 122 F.3d at 176.

▮ Each decision is fact specific, based on the individual case. *Zold v. Mantua,* 935 F.2d 633 (3d Cir.1991). The relevant inquiry is to the function of the public office in question and not the actual past duties of a particular employee involved. *Brown v. Trench,* 787 F.2d 167, 168 (3d Cir.1986). The *Branti–Elrod* principles are equally applicable in a failure to reappoint an employee at the end of term as they are to other adverse employment actions. *Zold,* 935 F.2d at 636 (citing *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). If the employee demonstrates all three requirements, the employer may avoid a finding of liability by demonstrating by a preponderance of the evidence that it would have made the same decision even in the absence of the protected affiliation. *Robertson,* 62 F.3d at 599.

The instant motion requires the Court to determine whether the Defendants are correct in asserting that Plaintiff has failed to meet one of the three requirements necessary to prove political discrimination or whether the Plaintiff is correct in asserting that no genuine issue of material fact exists for a trier of fact and that he is entitled to judgment as a matter of law.

The present record, however, does not support either the Plaintiff or Defendants, as a matter of law.

Plaintiff is able to establish the two requirements of political discrimination necessary to make out a prima facie case. The second requirement of the *Robertson* standard is not disputed by the Defendant since it is well established that maintaining a political affiliation is a protected constitutional activity. *Elrod,* 427 U.S. at 349, 96 S.Ct. 2673. As to the first requirement, Plaintiff supports his argument that the position of the Director of the Department of Public Works/Director of the Department of Municipal Support Services does not require political affiliation by contending that Township Ordinance 19–1984,[5] which grants protection from political removal from the office of Superintendent of Public Works, establishes that the position is not a political patronage job found in the *Elrod–Branti* exception. This Court agrees.

In *Zold,* the Plaintiff successfully proved that political affiliation was not required in the position of deputy town clerk by pointing to N.J. Stat. Ann. § 40A:9–133.7, which provided that any tenured clerk "shall hold his office during good behavior ... and he shall not be removed therefrom for political reasons." 935 F.2d at 638–639. In ruling, the Third Circuit found that "State law makes clear that political affiliation is not a factor in the municipal clerk's position." *Id.* at 638. The court also noted that a number of changes by the New Jersey Legislature intended to make the office of the municipal clerk more "professional" and less political. *Id.* These changes included the passage of the tenure statute and specific guidelines that required all town clerks to become certified. *Id.*

In the present case, Plaintiff can point to a similar statute and ordinance which state that the Superintendent of Public Works shall "not be removed from said office for political or other reasons except for good cause shown and upon hearing." N.J. Stat. Ann. § 40A:9–154.6; Township of Washington Ordinance 19–1984. This Court recognizes that both the tenure statute and Ordinance 19–1984, as in *Zold,* make clear that State law does not consider political affiliation in the position of Superintendent of the Department of Public Works. This view is further supported by N.J. Stat. Ann. § 40A:9–154.6(a)– 40A:9–154.6(h), which requires all public works managers to be certified prior to obtaining employment as a municipal Director of Public Works. *See* N.J. Stat. Ann. § 40A:9–154.6(g). Again, as the court found in *Zold,* such legislation suggests the intention by the New Jersey Legislature to professionalize the office of Superintendent of Public Works. Plaintiff therefore has proven he that "worked for a public agency in a position that does not require a political affiliation." *Robertson,* 62 F.3d at 599.

■ In contrast, both the Plaintiff and the Defendants have failed to establish the third requirement by showing that no genuine issue of material fact exists concerning Plaintiff's dismissal. Plaintiff must produce evidence that suggests that constitutionally protected conduct was a "substantial or motivating factor in the govern-

---

5. For this case, neither Plaintiff nor Defendants disputes that the Township of Washington is a public agency and State actor within the meaning of the test set forth in *Robertson. See American Future Systems, Inc. v. Pennsylvania State Univ.,* 752 F.2d 854, 861 n. 24 (3d Cir.1984) (First Amendment restrictions apply only to state actors). Therefore, the only factor needed to prove the first element is whether the position is one that requires political affiliation.

ment's employment decisions." *Robertson,* 62 F.3d at 599. In support of their motion for summary judgment, Defendants rely primarily on the deposition of Mayor Davidson. The mayor states that the cause for the dismissal was a need for a change. In addition, she alleges that poor job performance was also a factor in her decision not to reappoint the Plaintiff.

Plaintiff relies on Mayor Davidson's deposition primarily in stating that an inference can be drawn from the phrase "time for change" to mean that political affiliation was a factor. In addition, Plaintiff also presents evidence relating to the qualifications of Kenneth Patrone for the successor position of Director of the Department of Municipal Services as well as financial records from Washington Township First, Inc. as they relate to money paid to him.

As a result, both the Plaintiff and the Defendants fail to met the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. A reasonable trier of fact could conclude that "time for a change" could mean either a change in political affiliation, as Plaintiff asserts, or some other justification. Further, the record, without documentation, does not support the mayor's claim of poor job performance. To gain summary judgment, a party cannot rely upon self-serving conclusions, unsupported by specific facts in record. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. Even a non-moving party must point to concrete evidence in the record. *Id.* Plaintiff's evidence of Kenneth Patrone's qualifications and catering business also leaves in question why Plaintiff was not reappointed by the Defendant. The credibility and weight of such evidence must not be judged by this Court but decided by a trier of fact. *See*

*Anderson,* 477 U.S. at 242–43, 106 S.Ct. 2505.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied and Plaintiff's motion for summary judgment based on a due process violation is granted and denied as to his First Amendment motion.

An appropriate Order will be entered.

## *ORDER*

For the reasons set forth in this Court's Opinion filed even date,

IT IS ORDERED on this __ day of August, 2002 that Defendants' motion for summary judgment [12] is hereby ***DENIED*** and Plaintiff's motion for summary judgment based on a due process violation [15] is hereby ***GRANTED*** and ***DENIED*** as to his First Amendment motion.