NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2224
_____

GABRIEL BUSA,
                                        Appellant

v.

TOWNSHIP OF GLOUCESTER; MAYOR AND COUNCIL
OF THE TOWNSHIP OF GLOUCESTER; DAVID MAYER,
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 10-cv-01396)
District Judge:  Hon. Joseph E. Irenas
_____

Submitted Under Third Circuit LAR 34.1(a)
January 13, 2012

Before:   McKEE, *Chief Judge,* FUENTES, and JORDAN, *Circuit Judges.*

(Filed: January 23, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Gabriel Busa appeals the order of the United States District Court for the District

of New Jersey, granting summary judgment to the Township of Gloucester (the

"Township"), the Mayor and Council of the Township, and David Mayer (collectively,

"Appellees") on Busa's 42 U.S.C. § 1983 claim. For the following reasons, we will affirm.

## I. Background[1]

### A. *Factual History*

Busa was appointed the Director of Public Works for the Township in 1992, when it was controlled by the Democratic Party.[2] Prior to 2006, Busa was an active member of the Democratic Party. In 2006, Cindy Rau-Hatton, a Republican, was elected Mayor of the Township and asked Busa to continue his service as the Director of Public Works.

While serving under Rau-Hatton, Busa did not attend political functions or put political signs on his lawn for either party. Consequently, members of the Township's Democratic Party were displeased with Busa's lack of participation and cooperation in Democratic events. In 2009, David Mayer, a Democrat, was elected to replace Rau-

---

[1] Because we are reviewing a grant of summary judgment in Appellees' favor, we recount the facts in the light most favorable to the non-movant, Busa.

[2] The Township has chosen to follow New Jersey's Faulkner Act, which provides for a Mayor-Council form of government under the Optional Municipal Charters Law. *See* N.J. Stat. Ann. § 40:69A-1, *et seq*. Under that form of government, the mayor appoints each department head, including the director of public works, with the advice and consent of the township council. *Id*. § 40:69A-43(b). Pursuant to the Faulkner Act, the Township's Organizational Ordinance provides that "[t]he head of the Department of Public Works shall be the Director of Public Works. He shall be appointed by the Mayor with the advice and consent of [the township] Council until appointment and qualification of a successor." (App. at 5.)

Hatton as Mayor of the Township.[3] On December 21, 2009, Busa was informed that he would not be re-appointed as the Director of Public Works.[4]

B. *Procedural History*

On February 17, 2010, Busa filed a six count complaint in the District Court alleging, in part, a violation of his First and Fourteenth Amendment rights under the U.S. Constitution as a result of political discrimination. He claims that his termination was the result of his refusal to participate in Democratic Party activities and of the Appellees' perception of him as a member of either the Republican Party or a different faction of the Democratic Party. Following discovery, Appellees moved for summary judgment on all counts. The District Court granted Appellees' motion. With respect to the political discrimination count, the District Court determined that Busa's claim failed as a matter of law because he was employed in a position that required political affiliation and, as a result, he could be terminated based on his political affiliation.

---

[3] Mayer's term was set to begin on January 1, 2010.

[4] Mayer appointed Len Moffa, an active member of the Democratic Party, to that position.

## II.    Discussion[5]

The sole issue on appeal is whether, as Busa contends, his constitutional rights were violated because he was terminated on the basis that he did not politically support the faction of the Democratic Party in power.  In order to make a prima facie case of political discrimination in violation of the First Amendment, Busa must show that (1) he "was employed at a public agency in a position that does not require political affiliation," (2) he "was engaged in constitutionally protected conduct," and (3) "this conduct was a substantial or motivating factor in the government's employment decision."  *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007).

While the dismissal of public employees for political reasons may constitute an impermissible infringement upon constitutional rights, an exception is often made for employees holding policy-making positions, as such employees may properly be required to support the policy initiatives of elected officials.  *See id*. at 270-71 ("[T]he First Amendment protects public employees … from politically motivated discharge … unless the government can demonstrate that party affiliation is a proper requirement for the position.").  The key factor in determining whether a position appropriately requires political affiliation is whether the employee has "meaningful input into decisionmaking concerning the nature and scope of a major [ ] program."  *Id*. at 271 (internal quotation

---

[5] The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our review of an order granting summary judgment is plenary.  *Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002).  "A grant of summary judgment is appropriate where the moving party has established that there is no genuine dispute of material fact and 'the moving party is entitled to judgment as a matter of law.'"  *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

4

marks and citation omitted).  Other factors include whether the employee has non-discretionary duties, participates in discussions and meetings, prepares budgets, has a high salary, retains power over others, and can speak for policy makers.  *Id*.  According to Busa, the District Court erred in granting summary judgment in favor of the Appellees because there are disputed issues of material fact relating to whether he was employed in a position that required political affiliation for the effective performance in his public office.

Under the test set forth in *Galli*, Busa "must first show that []he works in a position that does not require political affiliation.  This burden of proof [then] shifts to the government … [to demonstrate that] political affiliation is central to the job itself."[6]  *Id.* at 271.  Viewing the record in the light most favorable to Busa, there is no genuine dispute of material fact.  It is clear that Busa was in a policy-making position for which political affiliation is an appropriate requirement.

Busa advances several arguments in support of his position that the Director of Public Works does not require political affiliation.  He argues that the State of New Jersey has enacted legislation professionalizing the position of Director of Public Works by requiring certain training and experience.  *See* N.J. Stat. Ann. § 40A:9-154.5, *et seq*.  Those requirements include the maintenance of a valid license, as well as continuing

---

[6] While the usual allocation of the burden of proof in employment discrimination cases would place the burden solely on the plaintiff, with only the burden of production shifting, *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000), in cases such as this the allocation of burdens is modified to require the defendant to demonstrate an overriding interest in encroaching on a constitutional right, *Armour v. Cnty. of Beaver*, 271 F.3d 417, 420 (3d Cir. 2001).

education. Busa points out that the State has required the Director of Public Works to obtain certification by having experience in public works management, completing a course of study, and passing an examination. *See id*. § 40A:9-154.6b(b); *id*. § 40A:9-154.6a(g); *id*. § 40A:9-154.6a(f). Busa also argues that the State has specifically created a path by which Township Councils can make the Director of Public Works a tenured position in order to "give recognition to the increasing demands for professional expertise that these positions require and to remove the opportunity for capricious appointments where the superintendent of public works has developed that expertise." (App. at 77 (internal quotation marks omitted).)

To meet their burden under *Galli*, Appellees argue that the position of Director of Public Works is a policymaking position that wields a great deal of influence over the Township's public works decisionmaking. They point to the New Jersey Civil Service Commission's Job Specifications, which state that the Director of Public Works "plans, organizes, and directs the programs and activities of a comprehensive public works department." (App. at 92.) The Director in the Township of Gloucester also "[d]evelops, administers, and implements a variety of public works programs" (*id*.), supervises approximately 85,000 employees (Busa Dep. Tr. 48:10-11, App. at 123), is responsible for the divisions of streets, sanitation, and parks and playgrounds, and submits budget requests to the Mayor, *see* N.J. Stat. Ann. § 40:69A-45. Moreover, the Director of Public Works reports directly to the Mayor and acts as an advisor to the Mayor on issues of policy with respect to the Township's public works. Finally, Appellees note that the Director of Public Works is not a tenured position in the Township.

6

Busa's arguments notwithstanding, the Appellees have demonstrated that the Director of Public Works is a policy-making position where political affiliation is an appropriate requirement because it involves discretion and decisionmaking with respect to policy issues. Indeed, "the Director of Public Works plays a meaningful role in decisionmaking for what is a major Township program. The Director has discretionary duties and acts as an advisor to the mayor on public works policy." (App. at 17.) That the State has enacted legislation to professionalize the position of Director of Public Works does not change the analysis. Busa downplays the importance of the duties he undertook while Director of Public Works, but it is clear that the position is one which, as the District Court correctly noted, involves a great deal of discretion regarding matters of public policy.[7] We thus agree with the District Court that the record does not reveal a genuine issue of material fact that would preclude summary judgment. *See* Fed. R. Civ. P. 56(a).

---

[7] While Busa is correct that some townships have opted to make the director of public works a tenured position, that has not happened in the Township of Gloucester. Busa's reliance on *McKeever v. Township of Washington*, 236 F. Supp. 2d 400 (D.N.J. 2002), where a former director of public works was able to demonstrate that the position did not require political affiliation in his township, is misplaced because the Township of Washington chose to pass a tenure ordinance for their director of public works. *McKeever* rightly emphasized that "[e]ach decision is fact specific, based on the individual case" when examining a claim of political discrimination. *Id*. at 410.

Busa also places a great deal of emphasis on *Zold v. Township of Mantua*, 935 F.2d 633 (3d Cir. 1991), where we held that the deputy municipal clerk position in the Township of Mantua did not appropriately require political affiliation. While the deputy municipal clerk position in *Zold* was not tenured, the role of the deputy municipal clerk was to fill in for the municipal clerk, a tenured position in the township. *Id*. at 639. The instant case is quite different, as the Director of Public Works heads a large department, has a great deal of budgetary responsibility and discretion, engages in decisionmaking affecting public policy, and does not fill in for tenured officeholders in their absence.

**III. Conclusion**

For the foregoing reasons, we will affirm the judgment of the District Court.